In The United States District Court for The Western District Oklahoma

FILED
NOV 2 3 2010
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY ______ DEPUTY

Jeremiah Daniel Jamieson
Petitioner

v. CIV-10-1176 M

Warden Robert Ezell
Davis Correctional Facility
Respondent

Appeal From Judgment entered in
Garfield County

Brief of Petitioner

Jeremiah Jamieson, Pro Se
6888 E 133rd
Holdenville, OK. 74848

25 October, 2010

Note: I apologize for my atrocious handwriting, but they do not allow maximum security inmates assess to typewriter or computer; nor do they allow us to have ink pens, we only have access to flexible pens which is just the ink cartridge itself no plastic tube to give pen stability. If not legible you can direct the facility to allow me to type on computer, as do other inmates at other facilities, such as Oklahoma State Penitentiary and it is also a max.

I wrote Brief in sections from End to Begining, so the End is more legible, because, I had a real pen at that point, but it was confiscated during an institutional shakedown.

**First Contention OF ERROR:** Mr. Camp was ineffective assistance for failing to investigate and find case precedent for his client's involuntary confession to be suppressed at Hearing on 22 January, 2008, or have prosecution witness's and client testify to the nature and facts of confession. (Fisher v State (206 3d 607) "Defendant was denied effective assistance of counsel during guilt and punishment phase of murder trial when trial counsel failed to conduct independant investigation of the case, he failed to prepare and present readily available evidence." Jennings v State (744 P2d 212) "When counsel knows of existing person or persons who posses information relevant to his client's defense and fails to use due diligence to investigate that evidence, such lack of industry cannot be justified by strategic error.")

Mr. Camp did not conduct pre-suppression investigation into the un-intelligent nature of Mr. Jamieson's post-polygraph waiver, and prepared no evidence (waiver) or questioned any witness's at Suppression Hearing. "Waiver of Right's are Specific" and Camp did not investigate or challenge the waiver as un-intelligent to any post-polygraph questions; nor question Det. Skaggs or Polygraph officer about their explaination of polygraph, further, he failed to present court with case's in favor of Suppressing confession because it was un-intelligent after polygraph. U.S. v Gillyard (726 F2d 1426)

Mr. Jamieson only waived his right's for what was explained to him by Det. Skaggs and Polygraph officer, and they explained they needed waivers signed for polygraph and questions to be asked by Polygraph officer before polygraph. They never explain anything about waiving right for any questions asked outside this explaination.

Here are Cases Mr. Camp should have investigated and presented to his client and the court in favor of suppressing confession as un-intelligent waiver to post-polygraph questions and interrogation.

**#1.** U.S. v Leon-Delfis (203 F3d 103) "Finding that waiver which applied to pre-test and test questions did not extend to post-test questions since waiver of rights are specific."

**#2.** Wood v State (11 p 3d 1249) "The accused's consent to polygraph exam outside presence of counsel is not a waiver of right to post-polygraph interrogation."

**#3.** U.S. v Gillyard (726 F2d 1426) "made it clear to a defendant that he was not merely taking a polygraph but was going to be interrogated immediatly following ... relying on a lack of clear indication in defendant's Miranda Right's Waiving that he would be subjected to post-polygraph interrogation."

**#4.** U.S. v Alvin R Vailes (2008 WL3891587 (D. Idaho)) "a polygraph test does not necessarily include a post-polygraph interrogation, according to Ted Pulver, 'whose testimony the court finds credible, the post-polygraph interrogation is completed for purposes of obtaining confession and is not a necessary component of the polygraph process,' SA Carter testified in some cases he does not even include post-polygraph interrogation"

U.S. v Leon-Delfis and U.S. v Alvin R Vailes are great examples of Similar cases; however in these cases, Defense Counsel was effective in their investigations before Suppression Hearing and had officer's and client testify to develop a record of Appeal, and Camp can be shown to be ineffective. He knew Det. Skaggs, Polygraph officer, and Mr. Jamieson were all present during which confession took place and was now in question as evidence to be suppressed, and possed vitale information relevant to the Judge's determination on the Voluntariness of confession. His failure to use diligence to investigate and question "cannot be justified by strategic error." (Jennings v State)

Mr. Camp had a duty to conduct a reasonable investigation and his failure to do so fall outside range of reasonable proffesional assistance, and amounts to deficient representation under first prong of Strikland. (Gonzales v M'Kune (247 F3d 1066); Hale v Gibson (227 F3d 1298)

This lack of investigation led Mr. Camp to mis-represent [redacted] Mr. Jamieson's best course of action as a Blind Plea, when clearly the best option was trial to prove conviction was product of coerced confession, absent any investigation by Mr. Camp into this error make his decision unintelligent because with this investigation he would have decided on [redacted] trial.

The fact is Camp did not investigate this line of defense or present it to client or court, as a result the Judge was kept from seeing exculpatory evidence infavor of suppressing confession, and both Judge and Camp have made their decisions with out all the facts.

Camp violated my right to a full and fair evidentiary hearing to suppress my confession when he did not [redacted] subpoena prosecution witness's to question or provide a record of appeal for the future disposition of my confession This testimony was vitale and was obtained in U.S. v Leon-Delfis and U.S. v Alvin Rhodes and used to suppress confession on appeal.

Unfortunatly, since the trial court was kept from making such a finding, because of Camp ineffective investigation and counsel, it did not make a finding on this issue. Suggesting the Court was unaware that Mr. Jamieson un-intelligently waived his rights to post-polygraph.

Det. Skaggs clearly requested Mr. Jamieson's presence for a polygraph, and relied on his lack of clearly indicating to Mr. Jamieson he would be questioned after polygraph, and when Det. Skaggs did attempt to interrogate Mr. Jamieson with out an attorney after polygraph, Mr. Jamieson terminated his attempt and invoked his rights while leaving the room. Simpson v State (672 P.2d 303); U.S. v Scalf (708 F.2d 1540) Det. Skaggs continues to follow me outside, and tells me, "I shouldn't go outside there are several gang members, and they are out for revenge."

The fact that the trial court did not make a finding on this issue, then was ignored on Post-Conviction by my request for an Evidentiary Hearing to obtain this testimony and to introduce and present the court with additional evidence in support of this claim militates against the government. "It's a general principal of appellate jurisprudence that a party desiring a more particularized finding at the trial court level must request them from the trial court." U.S. v Tosca (18 F.3d 1352, 1355)

Absent their finding on this issue and a "full, fair, or adequate" evidentiary hearing the responsibility falls on this court to [redacted] examine record and conclude whether the government presented Mr. Jamieson with a proper warning about polygraph and post-polygraph questions.

Mr. Jamieson was lured to EPD for polygraph by Det. Skaggs. Mr. Jamieson agreed to waive rights for polygraph questions and questions to be asked by Polygraph Officer before polygraph, he signed waiver to this explaination and never agreed to waive any right to questions to be asked after polygraph in an interrogation. I prove this by [redacted] terminating as soon as Det. Skaggs turned the polygraph into an interrogation and leave, but, subsequent, to several gang member's afflited to the victims Ingle Wood Family Gang Murder One Bloods directly outside and surronding my car, and threating to take my life, I am to scared to leave EPD because they will retaliate and kill me.

At my hearing Camp should have secured their testimony to develop a record of appeal for after trial, so the [redacted] Appeals courts could decide the issues of confession voluntariness. He should have found out who requested polygraph? Whether Mr. Jamieson was adequatly informed of officer's intentions of conducting a post-polygraph interrogation: or if the [redacted] interrogation was conducted by the same individual as the one conducting polygraph. (Gillyard 726 F.2d at 129) Whether it was described as a polygraph or interrogation to defendant, since, not being charged was the lure to get Mr. Jamieson to agree to polygraph and waive rights.

It was made clear in U.S. v Gillyard, that a defendant was not merely taking polygraph, but was going to be questioned about offense following polygraph, and Camp should have asked the questions. It was vitale to the Judge's determination on voluntariness, and was done in Alvin Rhodes hearing by counsel, where officer's testified that, "A polygraph is a test and does not necessarily include a post-polygraph interrogation," According to Ted Pulver,

whose testimony the court finds credible, 'the post-polygraph interrogation is completed for purposes of obtaining confession and is not a necessary component of polygraph process." SA Carter testified in some cases he does not even include post-polygraph interrogation."

Mr. Jamison did not show up for an interrogation, rather, a polygraph, and he should have testified to these facts, as was done by Leon-Delfis. My testimony would be similar to his testimony. Leon-Delfis," understood the first waiver applied to questions Agent Lopez would ask before actual polygraph test, and that the second waiver applied to yes or no questions asked during polygraph test." He testified, "he never consented to post-test questioning." He also stated, "That Agent Lopez told him the test would take two to two and one half hours to complete, and that Agent Lopez asked only 8 questions, and test took 20 to 25 minutes." Leon-Delfis, "Thought he was free to leave test," however, immediately after test, Agent Lopez asked him, "How he thought he did?" Leon responded, "Well, I think I did well because all I did was tell the truth." Leon-Delfis remembered that Agent Lopez immediately began to question him, and he felt pressured.

This is exactly what happened to me, when I took my polygraph, however, Camp did not have me testify. This would be my testimony. "I answer pre-polygraph questions, and polygraph questions. When finished, the Polygraph Officer asks me questions about my answers and results. We discuss them and Det. Skaggs enters room. Immediately, the discussion turns from polygraphee and polygraph officer to an interrogation conducted and dominated by Det. Skaggs. I was not there for interrogation, and not prepared for one without an attorney. I terminate the his attempt. I leave and invoke my rights by stating so in hallway leaving room. I am followed by Det. Skaggs and warned by him not to leave, because, there are gang member's outside. Once, I am outside I am confronted by these gang member's outside, and they make direct threats to take my life. This induces me to fear for my life and family. Det. Skaggs promise to protect me from these gang member's if I confess, and he can only protect me inside E.P.D." (Short Hand Testimony)

There was a Hearing to Suppress confession on 22 January, 2008, and Camp failed to provide effective assistance. He did not have officer's involved testify or Mr. Jamison, and gave zero cases with similarities as authority for suppression; nor did he explain these cases to me and the appeal process they took. Without this explaination I did not know I could appeal my confession past hearing on 22 January, 2008, so I did not know it was in my best interest to go to trial and prove my conviction was based on my false confession. Had Camp presented these cases to me or the court I would see I could appeal confession after trial, and I would never have pled guilty.

Baker v US. (404 F.2d 787) "When a plea of guilty is presented immediately following adverse ruling on critical motion to suppress, procedural circumstance has occured which, if ignored by trial court, might have bearing upon ultimate issue of voluntariness of plea." Fed. Rules Crim. Proc. rules 11, 32(a)(2), 18 U.S.C.A."

In this case the court was commended for its thoroughness to inform defendant he could appeal court's decision on confession. I was never informed by Camp or Judge, or I would have opted for trial and appeal. The court in Baker v US: "Now, at our hearing on the question of admissibility of the statements against you there is, of course, the possibility that by admitting them into evidence at the trial of your case I might be in error, it might be grounds for reversal. But, by entering a plea of guilty it is not necessary for the government to produce those statements of testimony concerning them. It is [redacted] an admission on your part of your guilt."

The court in Baker v US. warned the defendant that if he plead guilty he could not challenge his confession; this was not done in my case, and I did not know I could not prove my conviction was based on my false and coerced confession as a result of Camp's failure and Judge's to warn me about appealing my confession.

The Factual issue of concern is whether I was advised and waived my 5th and 6th Amendment Right to post-polygraph interrogation and if he knowingly waived his right to appeal confession; absent counsel's investigation or Judge's [redacted] warning that I could not appeal my confession on Blind Plea.

What the court should have been focused on, if Camp was effective, is whether the State can satisfy its burden of proof for post-polygraph interrogation. A polygraph is a test and has a beginning and end, and no person would have any reason to believe by taking a polygraph they would be subject to an interrogation following, unless, they were told so prior to the test and I was not.

Mr. Camp's representation kept the Judge from applying the very basic standard of the constitution through due process, because, Camp did not present the Judge with a diligent investigation in his assistance to Mr. Jamison, and as a result the Judge made his decision absent important facts and witness's in favor of suppression. The court did not make a determination on Det. Skaggs relyance of not clearly indicating to Mr. Jamieson he would be subject to further questioning after polygraph. If he chooses to waive rights to polygraph.

Consequently, the confession was deemed voluntary by the Judge and would be admissable evidence at Mr. Jamieson's trial. This decision was made because Mr. Camp violated my right to have all evidence presented to the Judge in favor of suppression and subpoena witness's who posses exculpatory evidence that would result in suppressing confession. Where as if Camp would have been effective, the focus of the Judge would have been focused for purpose of federal constitution, on the question of whether Enid Law Enforcement officials deceptively lured Mr. Jamieson to EPD for polygraph, [redacted] when their real intentions were to deceive Mr. Jamieson into waiving rights for polygraph and extract a confession immediately following. Mr. Jamieson was lured to EPD for polygraph, and it was used as a tool [redacted] to deceive Mr. Jamieson into waiver, so confession if extract after would be accepted, however, Mr. Jamieson only waived right for polygraph and terminated post-polygraph.

The employment instead without addressing the intelligence of Mr. Jamieson's waiver to post-polygraph, puts into question the standard used at hearing and outcome. While also Mr. Camp's ability to competently and intelligently advise Mr. Jamieson on best available course of action, absent his investigation, imediatly following this hearing on 22 January, 2008.

Mr. Jamieson's confession may only be deemed voluntary as admissible evidence if it is subjected to screening in accordance with correct constitutional standard, "Humane Rule" where Judge sees all evidence and disputed facts on the voluntariness of confession. However, in my case the Judge was kept from this evidence in his decision on voluntariness. Mr. Camp did not bring to the Judge's attention that Det. Skaggs and Polygraph officer relied on their lack of clearly indicating to Mr. Jamieson in their waiving he would be subjected to a post-polygraph interrogation. "Although State courts Factual Findings are normally entitled to great difference, ultimate issue of voluntariness of defendant's confession is legal question requiring independant federal determination" Arizona v Fulminante (499 U.S. 279, 295-96, 111 S.Ct. 1246, 1257-58, 113 LED 2d 302)

Mr. Jamieson's confession has not been properly deemed voluntary, since, a Judges decision cannot be determined in [redacted] violation of my 6th Amendment Right to effective counsel and counsel's obligation to do a diligent investigation before any Hearing, and Camp was neither diligent or effective and any decision after his lack of investigation is predicated on Camp's unconstitutional actions as defense counsel and cannot be relied on as intelligent.

The benchmark for judging this claim of ineffective assistance must be whether Camp's conduct undermined the proper function of the adversial process that cannot be relied on as having produced a just result. Camp's errors

have "resulted in an actual disadvantage to the course of defense" in my case, undermining the confidence of any decision after his un-constitutional performance no matter what decision was made, and any decision made by Mr. Jamieson has been prejudiced by Mr. Camp's lack of investigation.

In view of this error given a fair evaluation the probability is that the outcome of this proceeding was the product of [redacted] Camp's failure to investigate and question witness's vital into the voluntariness of confession. Any decision after Camp's performance on 22 January, 2008 is prejudiced by his mis-representation in defense of Mr. Jamieson. Mr. Camp had a duty to conduct a reasonable investigation in defense of Mr. Jamieson, and his failure to do so before this hearing falls outside the range of reasonable proffesional assistance. Because, when counsel knows of persons who posses information relevant to client's defense and fails to use due diligence to investigate that evidence, such lack of industry cannot be Justified by "strategic error" and there by amount to a deficient representation under 1st prong of Strikland. Gonzales v McKune; Jennings v State; Hale v Gibson

Jackson, 475 at 633, 106 S-ct 1404 quoting Johnson, 304 U.S. at 464, 58 S.Ct. 1019 "The USSC has stated 'that we should indulge every reasonable presumption against waiver of fundamental constitution right." "Doubts must be resolved in favor of protecting constitutional claim." Brewer v Williams, 1430 US. at 404, 97 S.Ct. 1232

This evidence was readily available before hearing and Camp did not investigate or present it for hearing; his failure to pursue and investigate this particular lead is not reasonable, and has resulted in a severe disadvantage to his client's defense to pursue as trial. Had this investigation been done it would have changed Mr. Jamieson's decision on plea. This testimony by these officer's and cases similar do exist and would have altered outcome of hearing and my decision on trial.

As a result I was unaware of the appeal process these similar cases pursued to suppress their confession, and I did not know they existed. I did not know if I went to trial I could prove my conviction was based on a false confession, without this investigation by Camp or Judges warning the appeal process my confession would take.

Following this line of reasoning you can see my confession was deemed voluntary by the Judge at a Hearing that was neither full, fair or adequate, because, of Camp's ineffective investigation and representation, and confession would have been evidence presented by District Attorney to convict Mr. Jamieson, and this decision by Judge had a bearing on Blind plea. This court can see from an Expanded view [redacted] into Original Record of all transcripts, confession and ineffective assistance is suppressing confession was a continuing burden on Mr. Jamieson's decision that carried over from his initial confession and into his plea of guilt.

In view of all this, Mr. Jamieson's view of trial was so polluted with ineffective assistance that he could not see a fair and reliable result, and this pollution kept Mr. Jamieson from pursuing trial and make an intelligent determination on defense after Camp's misrepresentation. You can see from this explaination, this decision was made without an effective investigation on part of Counsel and acted to coerce Mr. Jamieson's plea, because, [redacted] had a dilligent investigation been done by Counsel he would have never seen Blind plea as an option. Further, if Mr. Jamieson would have seen this explaination he would have decided on trial too.

Knapp v Janecka (337 Fed. Appx. 766) "Defense Counsel's performance, in allegedly failing to conduct pre-trial investigation did not prejudice defendant, and did not violate his right to effective assistance of counsel, where defendant failed to point to any specific witness's or evidence that should have been discovered and failed to show that any further investigation would have altered outcome of trial."

US. v Larsen (175 Fed. Appx. 236) "post-conviction movant's unsupported contention that his trial counsel failed to investigate his case adequatly and present witness's on behalf was insufficient to support claim of ineffective assistance of counsel, absent any claim that witness's existed who could have been favorable to his defense."

Gordy v Hargett (37 Fed. Appx. 437) "Defense counsel's alleged failure to investigate and prepare for trial in murder prosecution did not prejudice defendant, and thus did not amount to ineffective assistance, absent a showing that defendant would have insisted on a trial if counsel's investigation had been more thorough."

You can easily see the inference from these cases is that effective counsel is always assumed, and a petitioner must be specific. I pray this court can see I was as specific as I can without transcripts of proceedings or a trained eye. I have pointed out to this court Camp was ineffective in his investigation before 22 January, 2008. Where he did not investigate or present court with witness's infavor of suppression.

In contrast I pray you see these cases do support my claim of ineffective assistance, because, what these cases are absent I have presented in my petition as evidence, witness's by name and investigation of cases similar to mine, so as to explain appeal process a confession may take or appeal and may not take on plea. For this reason I pray you enter a decision to withdraw my plea and proceed to trial.

2nd Contention of ERROR: Mr. Camp was ineffective assistance for failing to investigate and find case precedent for his client's coerced confession to be suppressed and have prosecution witness's and client testify to nature under which confession took place at Hearing to Suppress 22 January, 2008. Fisher v State (206 3d 607) "Defendant was denied effective assistance of counsel during guilt and punishment phase of murder trial, when counsel failed to conduct an independant investigation of the case, he failed to prepare and present readily available evidence at trial." Jennings v State (744 P.2d 212) "When counsel knows of person's who exist and posses information relevant to his client's defense and fails to use due diligence to investigate that evidence, such lack of industry cannot be justified by strategic error." Gonzales v McKune (247 F.3d) "an attorney has a duty to conduct a reasonable investigation, and failure to do so may fall outside the range of reasonable proffesional conduct and assistance," "and thereby amount to deficient representation under 1st prong of Strickland." Hale v Gibson (227 F3d 1298); Gordy v Hargett (37 Fed. Appx. 437) "Defense counsel's failure to investigate and prepare for trial in murder prosecution did not prejudice defendant, and thus could not amount to ineffective assistance, Absent a showing defendant would have insisted on trial if counsel's investigation had been more thorough."

Mr. Camp did not conduct a diligent investigation into the "Angry Mob" of Inglewood Family Gang Murder One Blood gang members directly outside Enid Police Department, surrounding Mr. Jamieson's car in parking lot threating to take his life, or Det. Staggs "threat and promise" for police protection from the threat of bodily harm or death this "Angry mob" imposed to Mr. Jamieson if he left EPD and they follow.

Detective Staggs used this "angry mob" as a weapon to overbear Mr. Jamieson's will to leave EPD coercing Mr. Jamieson back inside EPD. Where Det. Skaggs would protect him and family if he confessed.

Mr. Jamieson had already terminated Det. Skaggs attempt to interrogate him without an attorney after polygraph, leaving room and building terminating all proceedings, invoking all right's previously waived and stated so on way out of room in hallway. When out side he is confronted by an "Angry Mob" surrounding his car and threating his life if he leaves.

This angry mob imposed an actual threat of bodily harm or death to Mr. Jamieson and contends that

that because he was a person of interest in Killing a well Known and Feared ranking Murder One gang member and his fellow affiliates (Angry Mob) were directly outside surrounding his car he was in real danger of immediate bodily harm or death at the hands of this angry mob.

Det. Skaggs was aware of the victims Murder One reputation and that this "Angry Mob" was out for revenge in the retaliation of their murdered leader. Further, he Knew Mr. Jamieson faced the retaliation of this angry mob, and Knowingly used this angry mob as a weapon to overbear Mr. Jamieson's will to leave E.P.D and coerce him in to confessing to protect himself and family as reward for protection from Angry mob [redacted]. This forced Mr. Jamieson inside and confess inorder to recieve promised police protection from Det. Skaggs. Once, inside [redacted] this is where Det. Skaggs fed off the fear induced in Mr. Jamieson by the Angry mob and Det. Skaggs [redacted] promise to protect Mr. Jamieson if he confessed. In response, Mr. Jamieson says "I Did It!" he only says "I did it" to protect his family from the retaliation of Murder One.

This confession was only made in response to the actual threat of violence Mr. Jamieson just encountered outside E.P.D, and Det. Skaggs promise to protect me and my family, and immediately [redacted] after I say, "I didn't do it. I am only saying I did, so you can protect my family."

Mr. Jamieson maintains that this promise, and actual threat outside from "Angry Mob" were extremly coercive. Because, of the angry mob and the obvious inference from the promise was that Mr. Jamieson's life would be indanger/jepordy if he did not return inside and confess, as oposed to leaving E.P.D and angry mob follow him home in retaliation, so "to sign a confession, under these circumstances would be the logical way to bring an end to this harrassment/violence, and a confession made or induced by promise of reward in benefit, as was the situation in question to this court and should be deemed involuntary and not allowed as evidence." Schack v State (84 OK.cir 2000, 18 P.2d 270), Story v State (73 OK.cir. 273, 120 P.2d 387; In re Dare [redacted] OK cir. 370 P.2d 846); Miller v Fenton (474 US. 104, 106 S.Ct. 445) "Whether infact the police engaged in the intimidation tactics alleged by defendant, LaValle v Della Rose (410 US. 690, 693-695, 93 S.Ct. 1203, 1205 35 L.Ed. 2d 637) are entitled to the § 2254(d) presumption.

I was arrested 30 days after this Angry mob threated my life, and promised police protection by Det. Skaggs if I conffessed and said, "I Did It!" to protect my self and family. I was given counsel, Mr. Camp.

On 22 January, 2008 a hearing to suppress my confession was held, and Mr. Camp did not investigate readily available evidence previously mentioned. He did not challenge or condemn these un-constitutional interrogation techniques used by Det. Skaggs, and the Judge at this hearing did not Know they took place when he made decision.

Mr. Camp's failure to investigate led the Judge to make his decision without vitale information infavor of suppressing confession and make a decision without all the facts. The Judge did not Know anything about this angry mob used by Det. Skaggs to overbear Mr. Jamieson's will to leave, or his promise to protect Mr. Jamieson and family from Angry mob if he returned inside and confessed. Nor did Mr. Camp have Det. Skaggs, Polygraph officer, or Mr. Jamieson testify to the facts described above. He's failure prejudiced Mr. Jamieson From a fair and reliable hearing on the voluntariness of confession. These witness's can testify to the facts of this claim, as well as transcripts of the proceeding, and would alter the outcome of hearing and decision by Mr. Jamieson on trial.

Here are cases similar to Mr. Jamieson's case that should have been investigated and presented by by Mr. Camp to trial court and Mr. Jamieson.

Payne v Arkansas (356 U.S., at 564-565, 567 78 S.Ct. at 848-849, 850) "The USSC found that confession was coerced because the interrogating officer had promised that if the accused confessed, the officer would protect the accused from an Angry mob outside Jail house"; "In determining whether defendant's confession was coerced so as to vitiate Judgment of conviction Supreme Court would review the circumstances under which confession was made"; "That defendant was not physically tortured afforded not answer to question whether confession was coerced, for there is torture of the mind as well as the body, the will is as much affected by fear as by force, and a confession by which life becomes forfeit must be expression of free choice."

US v McCullah (76 F.3d 1087) "Defendant's confession is involuntary if government conduct causes defendant's will to be overborne and his capacity for self-determination critically impaired, in determining whether defendant's will was over born in a particular case, court examines totality of circumstances both characteristics of the accused's and details of interrogation."; "Defendant's confession to government agent, was involuntary, when government agent told defendant the head of organization was out to kill him and then offered to intercede to protect defendant if he confessed."

Arizona v Fulminante (499 US 279, 295-96, 111 S.ct 1246, 1257-58, 113 L.Ed. 2d 302) "[C]oercion need not depend upon actual violence by government agent; a credible threat is sufficient."; "Threats by an officer have been found to be sufficiently coercive to require suppression of a resulting confession. Arizona v Fulminante, Lam v Kelchner, NO 00-3803, 00-4122, 2002 WL31812990 a *5 (3rd Cir Sept. 18 2002), in such cases the confession was the direct result of the threating behavior and was made to the officer immediately."

These three case are similar in the nature of confession and my response to the threat of violence. Three other cases have clearly established law and have great quotes-

Bram v US. (168 US. 532, 18 S.Ct. 183) "A confession can never be recieved into evidence where the accused has been influenced by any threat or promise, for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the accused, and therefore excludes the declaration if any degree of influence has been excerted."; "The human mind, under the pressure of calamity, is easily subdued, and is liable, in the alarm of danger, to acknowledge indiscriminately a falsehood or a truth, as different agitations may prevail. A confession, therefore, whether made upon official examination or in discourse with private person, which is obtained from a defendant, either by flattery or hope, or by impression of fear, however, slightly the emotions may be implied, is not admissible evidence, for law will not suffer an accused to be made the deluded instrument of his own conviction." (The fruit of the Judge's decision is based on Camp's ineffective investigation and representation, and as a result it will become evidence to convict me at trial, thus having an influence on me to not go to trial, absent this investigation as a line of defense for having a trial.)

Jackson v Denno (378 US 368, 84 S.Ct. 1774) "The USSC has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition. A number of cases have demonstrated that the efficiancy of the rack and thumbscrew can be matched given the proper subject, by more sophisticated modes of persuasion."

Malloy v Hogan (378 US. 1, 84 S.Ct. 1489); McGregor v Gibson (219 F.3d 1245); Clayton v Cooper (129 F.3d 1147)
Brady v US (397 US. 742, 90 S.Ct. 1463, 25 L.Ed 2d 747)

Did the governments conduct complained of bring about confession not freely self determined? Incriminating statements obtained by government acting, threats or promises that permit defendant's will to be over borne

are coerced confessions running afoul of the 5 Amdmt.

These all have similarities to consider as evidence in support of my claim against un-constitutional interrogation techniques used by Det. Skaggs to coerce my confession, but Payne v Arkansas, Arizona v Fulminante, and US v McCullah are very strong with virtual indistinguishable circumstances to consider at Hearing to suppress my confession. In these cases defense counsel was effective in representing client and developing a defense against charge and confession.

Camp should have secured the testimony of Det. Skaggs, Polygraph Officer, and Mr. Jamieson at hearing, so the appeal courts could decide the issues of fact concerning Confession, however Camp was more prepared for his "Windmeadle Defense" directly after hearing, convincing Mr. Jamieson State v Windmeadle was Precedence in Canfield County for his sentence.

This testimony was vital for the Judges determination on voluntariness and my decision for trial. In U.S. v Leon-Delfis and U.S. v Bluck & Vailes, this testimony was used by the appeals court to suppress confession. They went to trial because their attorney did the investigation my attorney did not do into the voluntariness of confession. As a result of no testimony the Judge was never given all the evidence, and he did not know their was an Angry mob of gang members outside to overbear my will to leave the polygraph I terminated. Nor did the judge know I confessed because Det. Skaggs promised to protect my family and I from this mob violence if I confessed. Jennings v State, Camp knows they posed information relevant to my defense and failed to use due diligence to investigate, and that lack is not justified by strategic error. He had a duty to conduct a reasonable investigation, his failure falls outside the range of reasonable assistance, and amounts to deficient representation under 1st prong of Strickland. Gonzales v McKune; Hale v Gibson

The factual issue of concern, neglected by Camp is whether Det. Skaggs engaged in un-constitutional interrogation techniques when Mr. Jamieson terminated his attempt to interrogate him after polygraph and left, invoking all rights waived. Then when outside was confronted by an Angry Mob who threatened to take his life, and, subsequent, to this violence he return inside. Det. Skaggs knew this Angry mob was outside, he told Mr. Jamieson "They were out for revenge," and also promised Mr. Jamieson and family protection for his confession.

Mr. Camp's behavior kept the trial court from addressing whether this behavior was such to overbear Mr. Jamieson will to leave E.P.D, and freely and voluntarily give confession. This investigation neglected by Camp would have oped a line of defense not discussed, and decision by Camp on plea would not have been made if he investigated. This area of law is clearly established and the best available course of action for Mr. Jamieson to pursue and to present to a jury, informing them that this Angry Mob coerced Confession and is False, because, the logical thing to do when facing this violence is to stop it by any means necessary, and the Police Detective said he would protect Mr. Jamieson if he confessed.

More to the point, Mr. Camp should have presented this to client and Judge, that "The USSC in Payne v Arkansas decide a confession was coerced because the interrogating officer had promised if the accused confessed, the officer would protect the accused from the angry mob outside jailhouse." (356 US. at 564-565, 567 78 S.Ct at 848-849, 850) This is exactly what happened to me." I finished poly, Det started to interrogate me, I was not prepared for it without attorney, so I terminated. He followed me outside, warned me about the gang outside out for revenge. Once, outside I was confronted by this threat and actual violence. Det promised to protect me and my family if I confess, so I say, "I DID IT!"

This angry mob kept me from entering my car to leave, and induced immediate fear of bodily harm or death if I leave. Det. Skaggs promise to protect if I confess. This "Threat and Promise" overborne my will to leave, and Coerced my return back inside E.P.D. I continually tell Det. "I didn't do it. I am only say I did so you can

protect my family."

"This court is not bound by the State courts voluntary finding, and has a duty to make an independent [redacted] evaluation of the record." Mincey v Arizona supra (437 U.S. at 398, 98 S.Ct. at 2416) That duty as in Mincey makes explicit, is not limited to instances in which claim is that police conduct was inherently coercive" Ashcraft v Tennesse (supra, 322 U.S. 154, 64 S.Ct. 926) It applies equally when interrogating techniques were [redacted] improper only because, in a particular circumstance of the case, the confession is unlikely to have been product of free and rational will."

What I ask this court to do is apply the rules and evidence the trial court was kept from, as a result of Camp's ineffective investigation. Mr. Jamieson should have the opportunity to have all issue which may be determinative of [redacted] Confessions voluntariness presented before a State Judge under appropriate assistance, which conform to the 6th and 14th Amendment. At my Hearing this was not done by Camp, since, he did not inform the court of un-constitutional interrogation techniques used by Det. Skaggs to overbear my will to leave and coerce a false confession. This was the direct result of Camp's failure to investigate and have witness's testify.

The Judges focus should have been on whether the techniques used by Det. Skaggs in extracting confession, were [redacted] compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitional means as whether my will was overborne, judge did not address this.

Camp knew this evidence existed. I told him, and I would testify. Det. Skaggs, Polygraph Officer were present during which confession took place and was now in question to be suppressed, and their testimony would be needed to suppress. It cannot be reasonable not to investigate this particular lead for this hearing or have witness's testify. This failure to do so by Camp falls outside reasonable conduct satisfies first prong of Strickland, and second prong is met when his representation prejudices me from a full and reliable hearing and decision on trial, absent this investigation.

Since, the court did not make a finding on this issue it suggests the court was unaware that Mr. Jamieson was coerced by this Angry mob, and the fact they did not make a finding, then ignored on Post-Conv and Evidentiary Hearing. When I specifically requested their testimony for Hearing in request, and militates against the government. "It is a general principal of appellate jurisprudence that a party desiring a more particularized finding at the trial court level must request them from the trial court." U.S. v Tosca (18 F.3d 1352, 1355)

Absent their finding on coercion, and a "full, fair, or adequate Evidentiary Hearing" 25 May, 2010 the responsibility falls on this court to examine record and conclude whether Camp's performance or lack there of effected my ability to make an intelligent decision on trial, and if Camp would have made this investigation if he would have changed his decision to lead Mr. Jamieson into Battle Blind and surrender to an automatic life sentence without a fight.

Mr. Jamieson contends that if Camp was effective, the Judge would have been focused, for purposes of Federal Constitution, on the question whether Enid Police Officials engaged in un-constitutional and coercive interrogation techniques, and whether they were such to overbear my will to leave EPD and freely give voluntary confession, and would have suppressed confession at hearing and decision by Camp on trial given this evidence.

techniques, and whether they were such to overbear Mr. Jamieson's will to leave E.P.D and freely and voluntarily give confession, and would have suppressed confession at hearing given this evidence. At the very least Mr. Jamieson would have seen the appeal process and outcome of other similar confession cases and would have went to trial to prove he did not pull the trigger.

(86) The employment instead, without addressing this "Angry Mob" and coercive interrogation techniques puts into question the standard infected by the Judge, and Mr. Jamieson's decision, since, their decisions were made without all the evidence being presented by Camp, resulting in Mr. Jamieson un-intelligent plea, pursuant to which he is now detained in violation of constitution. Mr. Jamieson has the right to have all evidence which may be determinitive to the voluntariness of his confession presented by Effective Counsel to a State Judge in a Hearing to Suppress, and then be convicted according to the Substancive procedural due process requirement of the 14 Amendment.

(87) The Judge may only deem a confession voluntary, once he sees all evidence and disputed facts according to the "Massassachuttes" or "Human Rule" "The procedure must, therefore, be fully adequate to ensure a reliable and clean cut determination on the voluntariness of the confession including the resolution of disputed facts upon which voluntariness issue may depend" Jackson v Denno (378 U.S. 368, 84 S.Ct. 1774) The Judge found confession voluntary because the waiver was signed, and never addressed the "Angry mob" outside and Det. Skaggs "Threat and Promise" so by ineffective representation by Camp at Hearing Judge did not decide voluntariness of confession on all evidence and witness's to make a determination according to "Massassachuttes" or "Humane Rule" adopted by Oklahoma.

(88) A confession not properly determined voluntary, and is allowed to be entered as evidence is forbidden because of the method used to extract the confession offend the underlying pricipal in the enforcement of our criminal law: ours is an accusitorial and not a inquisitional system, so how can you say a coerced confession has no bearing on a plea of guilt. It is unlikely Mr. Jamieson would have never been arrested were it not for these coercive and un-constitutional interrogation techniques. Any evidence Garfield County has only points to me because I said "I DID IT," and if another person would have said "I DID IT" this same evidence would have pointed to them.

(89) The bench mark for judging this claim, must be whether

M

Camp's conduct undermined the proper function of the adversial process that cannot be relied upon on having produced a just result, and Camp's error has resulted in an actual and severe disadvantage to Mr. Jamieson's defense, undermining the confidence of any decision after Camp's failure to investigate, no matter what decision he represents.

(90) In view of this error, given a fair evaluation, the probility is that the confidence of this proceeding was the product of ineffective counsel, and continued 10 minutes after when Mr. Camp represent Blind Plea as the best available defense against the charge and sentence of Life. Mr. Jamison is deprived of due process of law if his conviction is founded in whole or in part upon an involuntary confession, and Camp used my confession to dissuade me away from trial, also without giving me the benefit to assess the appeal process my confession would take after trial.

(91) Mr Camp's performance at this Hearing was a complete and utter failure to investigate this line of defense, and puts into question Judges decision, and Mr. Jamison's ability to make an informed decision on plea. Mr. Jamieson did not know these cases existed or circumstances involved, nor did he know he can appeal Judges decision not to suppress confession. Mr. Jamieson knew what took place and felt they were wrong, but he had NO knowledge of the law at the time of hearing and was at the mercy of ineffective counsel.

(92) This evidence was readily available before and at Hearing, however Camp did not investigate and present this readily available evidence, and his failure to pursue and present this particular lead is ineffective and irresponsible, and has resulted in Mr. Jamieson's un-intellegent plea among other available courses. The testimony by these officer's and cases with similar circumstances do exist and would have altered outcome at hearing and decision on trial. I was unaware of the appeal process these similar cases pursued to prove confession were false, as a result of Camps not presenting them to me, or Judges warning that I could appeal his decison if I went to trial and confession was admitted in error, as was done by Judge in Baker v U.S. previously cited. (404 F.2d 787)

(93) Following this line of reasoning you can see my confession was false, coerced and involuntary, then deemed voluntary by the Judge without seeing all the evidence or witness's. This was the result of Camp's ineffective investigation, and had a bearing on his decision to pursue Blind plea on behalf of client's defense. Where if Camp would have done this

diligent investigation, then present me with evidence, at court, the outcome would have been diffrent at decision on plea. Mr. Camp's decision to Blind Plea on a "Windweed Defense" (ERROR 3) was based on his lack of investigation of Mr. Jamieson's confession.

(94) This court can see from an Expanded view into all the transcripts of my case, Counsel's ineffectiveness to present court with evidence and witness's for Mr. Jamieson's defense at hearing was a continuing burden from Mr. Jamieson's initial confession and had a heavy burden that continued into his plea of guilt.

(95) In view of all this, Mr. Jamieson's view of trial was so polluted with ineffective assistance that he could not see a fair and reliable result on confession or result at trial. This pollution kept Mr. Jamieson from pursuing trial or have the ability to make any intelligent decision on defense after Mr. Camp's misrepresentation. You can see from my explaination, I made my decision on plea, immediatly after Camp's misrepresentation, and was done without effective assistance to investigate my case. Absent this ineffective assistance and investigation, Mr. Jamieson would have went to trial to prove his conviction on appeal was the result of his false and coerced confession.

(96) Knapp v Janecka (337 Fed. Appx. 766) CA. 10 N.M. 2009
"Defense counsel's performance, in allegedly failing to conduct pre-trial investigation, did not prejudice defendant, and did not violate his right to effective assistance of counsel, WHERE defendant failed to show that any further investigation would have altered outcome of trial"

(97) U.S. v Carson (175 Fed. Appx. 236) CA. 10 Utah, 2006
"Post-Conviction movant's unsupported contention that his trial counsel failed to investigate his case adequatly and present witness's on behalf was insufficient to support claim of ineffective assistance of counsel, ABSENT any claim that witness's existed who could have been favorable to defense."

(98) Gordy v Hargett (37 Fed. Appx. 437) CA. 10 Oklahoma 2002
"Defense Counsel's alleged failure to investigate and prepare for trial in murder prosecution did not prejudice defendant, and thus could not amount to ineffective assistance, ABSENT a showing defendant would have insisted on Trial if counsel's investigation had been more thorough."

(99) It is easy to see the inference from these cases is that counsel is always assumed effective, and a petitioner must be specific. I pray this court can see I was as specific as I can without transcripts

of proceeding or a trained eye.

(100) I have provided this court with Mr. Camp's ineffective investigation for Suppression Hearing and performance at Hearing, and resulted in his decision to have client Blind Plea to an automatic life sentence without a fight. Camp did not investigate cases infavor of suppression and tried to appeal confession. This failure resulted in him not having client or prosecution witness's testify to exculpatory evidence, with out this investigation Camp thought Blind Plea was a viable defense, when it was not, and cannot be considered sound trial strategy without this investigation.

(101) In contrast, I pray this court can <u>Read my petition</u> and see these cases do support my claim of ineffective asstance. Because, what these cases were <u>absent</u>, I have presented as evidence. I have specifically requested witness's to testify in my Request for Evidentiary Hearing, and to present additional evidence that were in transcripts but not addressed or investigated by Camp or case in support of these facts.

(102) I pray for this reason the, court will enter a decision to allow me to withdraw my plea of guilt and enter a plea of not guilty proceeding to trial, so I can have a full, fair and adequate Suppression Hearing on Voluntariness of confession. Unless, this court will also suppress confession for Trial allowing me to prove all allegations in error.

- Affidavit from father is attached to petition or Pg. 45, and is same affidavit used in my post-conviction. I have attached that same affidavit following errors as Exhibit A for easy reference.

**3rd Contention of Error:** Mr. Camp mis-represents alternative course of action, materially mis-informing Mr. Jamison State v Windrweedle is Garfield County Precedence for Pricipals of Equal Justice in recieving 15 years prison sentence, mis-leading Mr. Jamieson he is following in Mr Windrweedle's footsteps toward a 15 year sentence by agreeing to Blind Plea. Mr. Camp unfairly held out this authoritative assurance of leniency when he represented State v Windrweedle as precedence in exchange for Mr. Jamieson's Blind Plea to First-Degree murder. (Unbeknown to Mr. Jamieson, Mr. Windrweedle's sentence is the product of a negotiated plea to First-Degree Manslaughter and a 15 year prison sentence, not Blind Plea to first-Degree murder. Garfield County Case # CF-1999-378)

Mr. Camp first planted his "Windrweedle Seed" in my Father and Sister, John and Heather Jamieson, in a conversation that took place in a visit to his law office. Where "he, Mr. Camp, informed my father the county set precedence in what Mr. Camp said was a similar case regarding an Air force man, Mr. Windrweedle, who killed his wife while the children were still present in the home.

My father and sister relayed this conversation to me in a visit and phone call telling me Mr. Camp will get me a 15 or 20 year sentence, because, an Air force man killed his wife and got this sentence in Garfield County. This was the very first time I was exposed to a 15 year sentence because of Mr. Windrweedle. This was a month or two after my arrest.

My father in another conversation with Camp told me, Mr. Camp had a conversation with Brian Lovell, who had a conversation with Judge Hladik, and he was inclined to sentence me to 15 years like Mr. Windrweedle. My father relayed this conversation to me in a vistit and phone call. (previously we had similar short conversations during court appearances)

On or about 10 January, 2008 Mr. Camp came to visit me, during this visit he spoke to me [redacted], [redacted] face to face about State v Windrweedle, and during this visit is where [redacted] Camp first mentioned to me this case was precedence for the Judge to follow when sentencing me. He also presented me with the conversation between Mr. Lovell and Judge Hladik. In this this discussion Mr. Camp presented me with his confidence as an Attorney that Mr. Windrweedle's sentence is precedential authority in Garfield County for me to recieve the same sentence under pricipals of equal justice.

Later that day, when I was taken back to my cell I asked Nanya Zodoq-El if I could use his law dictionary to look up the word precedence. What I found was Precedent its origin, here is what I learned from its definition.

<u>Precedent:</u> "a previously decided case recognized as authority for the disposition of future cases. To the extent that future cases rely upon the precedent or distinguish it from themselves without disapproving it, the case will serve as a precedent for future cases under cases under doctrine of <u>Stare Decisis</u>" (Don't know this word so I looked it up too.)

<u>Stare Decisis:</u> "to stand by that which was decided. Rule by which common law courts are reluctant to interfere with pricipals announced in former decisions and therefore rely on judicial precedent as compelling guide to decisions of cases raising similar to those previous cases." (Example is given in book)

<u>Example:</u> "A state Supreme court rules that a person's privacy intrests demand court protection of telephone toll records from police investigations. Several years later, the issue is brought back to the court. The prosecution claims that other states allow records to be used without interference in privacy and that other privacy protections can be employed if neccessary. Even if court has new members, and they agree, the court is most likely to apply stare decisis and abide by previous decision."

With these definitions and Camp's use of State v Windrweedle as precedence in Garfield County for my sentence under pricipals of Equal Justice, I am under the understanding State v Windrweedle is a previous case in Garfield County recognized as authority for the disposition of my sentence in Garfield County and will serve as precedent for the Judge in Garfield County to follow under doctrine of stare decisis.

Later that month Camp is ineffective in representing me at Hearing to Suppress, and immediately following the Judge's ruling on the Voluntariness, denying the suppression request Mr. Camp pulls me to the side of the courtroom to speak with me. In this conversation he tells me we cannot overcome the jury's perception of my confession at trial, and I risk never coming home again. He tells me I have another option in State v Winderweedle as Equal Justice. "Remember, I spoke to you about Mr. Windeweedle, and I know you remember 'The Pledge of Allegence' so I know you remember Equal Justice for all. This is what it means in legalspeak, you are eligble for any sentence with virtually indistinguishable circumstances, and I have one right here in Garfield County is State v Windeweedle. Mr. Windeweedle was a military man just like you and he got a 15 years prison sentence for his crime. Under pricipals of Equal Justice you can to, so inregards to a sentence you have nothing to worry about."

With this explaination, and Camp's earlier conversations with my father and Sister in may of 2007, and his conversation with me on 10 January, 2008 and short conversations inbetween court appearances with me about Mr. Windeweedle and Equal Justice, he has just confirmed the definition I previously looked up after our visit on 10 January, 2010. Where Where according to his explaination of State v Windeweedle, this case was precedence in Garfield County, and according to this explaination I agree to sign plea. I only agree because Mr. Camp represents this case as precedance for a sentence of 15-20 years in prison to follow when the Judge sentences me.

These actions by Mr. Camp mislead me and my family to believe I am walking in Mr. Windeweedle's footsteps toward a 15-20 year prison sentence on plea, and my plea can only be seen as voluntary under this 15 year mis-representation by Mr. Camp toward the future of my sentence on Blind Plea.

This court has held that a plea may be involuntary if an attorney "materially misinforms defendant of the consequences of the plea or Court's probable disposition." U.S. v Rhodes (913 F.2d 839, 843) cert. denied, (498 U.S. 1122, 111 S.Ct 1079, 112 L.Ed. 2d 1184) quoting U.S. v Laycock (880 F.2d 1184, 1186); U.S. v Williams (919 F.2d 1451) "In order for a plea to be held invalid, defendant must show plea was the product of material misrepresentation, thus, preliminary calculation must constitute a material mis-representation and defendant must show he relied there on."

Certainly, if an attorney recklessly presents his client and client's family with precedence in a specific case and that this previously decided case is authority for the court to follow as pricipals of equal justice in this county (Garfield County), he has made a promise in regards to his client's sentence. Since, the definition of precedence is a previously decided case recognized as authority for the disposition of the future case, and the case will serv as precedent for future cases under the doctrine of stare decisis.

Mr. Camp unfairly held out this authoritative assurance of leniency in exchange for Mr. Jamieson's plea of guilt. Mr. Jamieson did look up this definition to have a solid foundation of his attorney's use of Mr. Windeweedle's 15 year prison sentence as precedence in Garfield County and Mr. Jamieson relied thereon.

Now the question arises whether Mr. Camp's use of precedence was such an assurance to make it coercive, or wether this mis-representation of State v Windeweedle can be deemed constitutionally ineffective. Brown v Beto (377 F.2d 950)

First, by the very definition of precedent and Camp's use, he did infact give an indication that the court in Garfield County must follow pricipals of equal justice in sentencing Mr. Jamieson similar to Mr. Winderweedle.

Second, Camp's representation as virtually indistinguishable is clearly wrong, State v Windeweedle is a negotiated plea to a reduced charge of First degree manslaughter and a 15 year prison sentence; not a Blind Plea to First-Degree murder as Mr. Camp represents to Mr. Jamieson on plea.

Mr. Camp may give an estimated prediction based on experience, but he cannot recklessly give a promise of leniency presenting State v Windnweedle as precedence in Garfield County.

At my Hearing to withdraw my plea Mr. Camp Testified, "We discussed that. That's not what I-NO, I didn't tell him the Judge was going to give him 15 years. The arguement. What I told him that I would argue at sentence was that this case was a similar type - or to bring to the court's attention the similarities of these cases and how Mr. Windnweedle got 15 and why I thought it was appropriate for him, Mr. Jamieson to get you know, potentially somewhere in that range... so the arguement that I told him I was going to make at sentencing was the similarities and why we thought that that sentence would be appropriate or something around that time."

At sentencing Mr. Camp argued "that, as these cases were practically indistinguishable the court ought to apply pricipals of equal justice and sentence Mr. Jamieson to 15 or 20 years with a long period of suspension.

The problem with this approach to sentencing is that the two cases are not similar. Mr. Windnweedle plead guilty to First-Degree Manslaughter, not First-Degree Murder. Additionally, it appears Mr. Windnweedle's plea was pursuant to a negotiated plea agreement, not a Blind Plea as in the case of Mr. Jamieson. Any possible similarities between the two are simply not relevant with the cases in the postures Mr. Camp uses them. It was ineffective for Mr. Camp to place all of his eggs in the Windnweedle basket.

This use by Mr. Camp is a material mis-representation of Mr. Jamieson's sentence on plea, and Mr. Jamieson and family were misled by Mr. Camp to believe the result of this plea would be a sentence of 15 to 20 years.

Mr. Jamieson pursued this Blind Plea un-intelligently, because, of this material mis-representation by Camp, he being an officer of the court and having a proffessional duty to represent me in decisions in the best intrest of my case; I put total 100% faith in Mr. Camps representation.

Mr. Camp used State v Windnweedle as an earlier case that was relevant to the future disposition of Mr. Jamieson's sentence, and his actions present the court with the very definition of precedents.

Mr. Jamieson's plea is involuntary because it was the product of Mr. Camp's unkept assurance, that Mr. Windnweedle's sentence was precedence in Garfield County for his sentence to be the same.

Mr. Camp through his "Windnweedle Defense" assured Mr. Jamieson and family he would recieve a far lesser sentence than that imposed, that although at time of plea Mr. Jamieson represented that his counsel made no promise that plea was voluntary, he is not precluded from attacking the voluntariness where he so answered because Mr. Camp presented Mr. Jamieson with the assurance that this case was precedence for his sentence to follow.

At the end of plea hearing, Mr. Camp embarked on a line of questioning that can only be seen as a way to cover his Windnweedle [redacted] tracks knowing his actions would come into question about his use of State v Windnweedle. This is further discussed in Mr. Jamieson's Direct Appeal, where Camp's questions are listed, Direct Appeal pages 6-10.

I do not have any proof other than my own testimony that Mr. Camp coached [redacted] my answers to the questions asked. However, I do have proof that was readily available and not obtained by Mr. Cavell at my hearing to withdraw plea hearing or by Mr. Morehead on Direct Appeal, that Mr. Camp led me to believe by entering this Blind Plea State v Windnweedle was precedent in Garfield County for the Judge to sentence me to 15 or 20 years on Pricipals of Equal Justice for all. This proof is a factual basis to withdraw my plea as

unintelligent, since, Mr. Camp had similar conversations with my Father and Sister, and "informed them the county had set precedence in what he, Camp said was a similar case."

The use by Camp of State v Windnwedle as precedence in Garfield County is not a mere prediction, rather, by definition a relevant case with authority for the court to follow as doctrine of Stare decisis, and Mr. Jamison was induced to plead guilty because of this precedented case, leading Mr. Jamison and family he would not recieve a sentence greater than 15 or 20 years in prison.

This promise was made through Mr. Camp's "Windnweelle Defense," and was not kept, and is proven by my Father's Affidavit, as a result Mr. Jamison's plea was not intelligent as to his sentence on plea [redacted]

Machibroda v U.S. (368 U.S. 487, 82 S.Ct. 510, 7 L.Ed 2d 473) This case has been extended to the representation by an accused's counsel that, by prearrangement with the court or prosecution, a plea of guilty will not result in a greater than, a given punishment when, in fact, a greater punishment is imposed. U.S. v Hawthorne (502 F.2d 1183); U.S. v Valenciano (495 F.2d 585); Roberts v U.S. (486 F.2d 980); Walters v Harris (460 F.2d 988) (by implication), cert denied, 409 US. 1129, 93 S.Ct. 942, 35 L.Ed. 2d 262) Such a representation is far different from a mere prediction by counsel as to length of sentence which is likely to result from a guilty plea, taken from Allison v Blackledge (533 F.2d 894) ← Very Similar case

Ordinarily Mr. Jamison would be held to his statement at the time he entered plea unless he advances a reasonable explanation for his inconsistent allegation. Crawford v U.S. (519 F.2d 347) Such an explanation has been advanced by Mr. Jamison, that he answered as he did when he entered plea because he had been instructed so by Camp. Mr. Jamison is therefore not foreclosed by the statement he made in order to effect acceptance of his plea from subsequently attacking its voluntariness. Edwards v Garrison (529 F.2d 132)

Mr. Jamison has testified both that a promise was made through State v Windnwedle and inducing the plea he made, and that its existance was concealed to accept the plea, by Camp's own questions.

Mr. Camp's actions present this court with the very definition of his use of Mr. Windnwedle's 15 year sentence as precedence in Garfield County for Mr. Jamison to accept plea. Mr. Camp can deny all he want, but his actions speak louder than his words.

Because, this plea was induced by such a mis-representation of his sentence by Mr. Camp, Mr. Jamison should be allowed to withdraw his plea of guilt and proceed to trial. Brady v U.S. (397 US 742, 90 S.Ct. 1463, 25 L.Ed. 2d 747); Boykin v Alabama (397 US. 238, 89 S.Ct. 1709, 23 L.Ed 2d 274); Strickland v Washington (466 U.S. 668, 687, 164 S.Ct. 2052, 2064, 80 L.Ed. 2d 674). Patton v U.S. (281 U.S. 276, 50 S.Ct. 253); Seamons v Snow (84 F.3d 1226, 1238) "The weight and authority of other circuit courts suffice to establish law."

What was Mr. Jamison's frame of mind when signing Blind Plea?

Who used what to induce Mr. Jamison to agree to Blind Plea?

If you eliminate State v Windnwedle as precedent would Mr. Jamieson still plea?

The record gives a false sense of voluntariness, Mr. Jamieson was under the mis-representation of Camp, that he had precedence for the Justice system to sentence Mr. Jamieson to 15 years in prison. This gave Mr. Jamison a false sense of security when entering plea based on State v Windnweedle, and was the direct result of Camp's presedented "Windnwedle Defense."

Mr. Jamison's plea is not voluntary unless Camp's "Windnwedle Defense" is precedence for a 15 or 20 years prison sentence.

4th Contention of ERROR: Mr. Camp's actions go against warning Mr. Jamieson of minimum sentence of charges is Life with parole. Mr. Jamieson here in by incorporates paragraphs 1–138 by reference.

(139) Mr. Camp's actions to have client pursue blind plea in hope of leniency, because, State v Winderweedle is Garfield County precedence goes against warning Mr. Jamieson of sentence minimum of Life. By Mr. Camp's own admission he used Mr. Winderweedle's sentence of 15 years to lead Mr. Jamieson he was going to get Same sentence in Garfield County on blind plea.

(140) "In every sense our Constitutional provisions in respect to jury trials in criminal cases are for protection of the intrests of the accused, and as such as they may in a limited and guarded measure, be waived by the party sought to be benefited by waiver." Patton v U.S. (281 U.S. 276, 50 S.Ct. 253)

(141) Where was the benefit in my blind plea? There was none, the party benefited was the State, Mr. Jamieson did not. His attorney gave him an automatic life sentce, upon, a blind plea to First Degree murder. There may have been a benefit if Mr. Jamieson was wanting to avoid a Death Sentence, but it was not on table. Mr. Jamieson was trying to avoid a Life Sentence, because, of his attorney's representation of State v Winderweedle as Garfield County Precedence for a 15 years sentence.

(142) Carabajal v Lemaster (52 Fed appx. 473) "Defendant failed to show reasonable probability that he would have insisted on going to trial had counsel investigated his case differently, and thus defendant was not denied effective assistance of counsel due to cousel's allegedly inadequate investigation, where State had a very strong case, including defendant's confession and key witness's testimony, and counsel succeeded in negotiating favorable plea that significantly limited his prison sentence."

(143) In contrast you can see that this is the opposite of Mr. Jamieson's case. Mr. Jamieson has shown reasonable probability he would have gone to trial if Mr. Camp did a diligent investigation ERRORS 1-3. The State did not have a strong case, the only evidence is a false confession, that was induced by Mr. Jamieson's Fear of immediate bodily harm from an Angry mob outside Enid Police Department and promise for police protection if I confessed. The eyewitness were drunk and high when they seen the shooter, and testify that the shooter's face was covered, Karlwooten testified, "That he had to play over photo's to get a positive Identification and God told him it was my picture." He even wrote a statement he thought some one else was the shooter at the crime scene. Then Mr. Camp did not negotiate any plea, rather, he led Mr. Jamieson to plead Blind to an automatic Life sentence without warning him, Life with Parole was his minimum sentence.

(144) Mr. Jamison, at time of plea, did not even know there was a mandatory minimum sentence of Life, and Mr. Camp failed to warn Mr. Jamison that no matter what option he pursued, as long as he was still charged with First-Degree murder he cannot recieve any sentence less than Life, and if he pled blind it would result to a Life Sentence.

(145) If Mr. Camp would have warned Mr. Jamison of this minimum sentence, he would never be able to materially mis-inform me, I will recieve a similar sentence as Mr. Windenweedle on this plea, or that State v Windenweedle is "County Precedure" for my sentence.

(146) Mr. Camp is only able to mis lead Mr. Jamison, because, he did not warn me this Blind Plea would result in an automatic Life sentence, and the only question the Judge will consider is with or without parole.

(147) Mr. Camp gives credit to incompetence when he asks Mr. Jamison, after colloquy with Judge, "You understand we have no idea what Judge Hladik would do on Blind Plea?

(148) This is proof from his own mouth, "he has no idea." When Oklahoma Statutory minimum for First-Degree murder is Life with parole, and there is actually a guranteed sentence on plea, Life. The only question is With or Without parole, but because of Mr. Camp's material mis-representation of blind plea on "County Precedure," Mr. Jamison does not know he is signing a plea to a Life sentence

(149) It is incompetent for Mr. Camp to ask this question stating there is no idea to Judge's decision, and for him to infere anything else is contrary to State law, proving his ignorance of law. Then for the Judge to ignore this statement and not correct Mr. Camp is contrary to his job to ensure Mr. Jamison knows Life with parole is his absolute minimum sentence.

(150) Mr. Camp finishes his question with "but you understand what possibly could happen?" Under the mis-representation of "County Precedure" in State v Windenweedle, I say, "Yes." I only say yes, because, he told me I was pursuing "Equal Justice," and I was not lying.

(151) "[A] defendant's guilty plea must be both knowing and voluntary in order to be valid, and... the defendant's decision to plead must constitute a deliberate and intelligent choice between available alternitives." U.S. v Fernandez (877 F.2d 1138 (Quoting Rosado v Civiletti (621 F.2d 1179) Rule 11 is only satisfied in defendant know min. and max sentence.

(152) Would you not think if Mr. Jamison enterd Blind intelligently, knowing he was signing a Life sentence and the only question was with or without parole, he would be statified, since, he got the very minimum possible sentence.

However, he is not, and it is because Mr. Camp materially mis-represented my

my sentence on plea, leading me to believe I was going to be sentenced according to Garfield County's previously precedented case of State v Windsweedle.

Ask yourself, What is the benefit of Mr. Jamieson's Blind Plea? without Mr. Camp's mis-representation that State v Windsweedle is "County precedence" in receiving a 15 or 20 year prison sentence. There is none and Mr. Jamieson would not have plead guilty if Mr. Camp would have warned me the minimum sentence was Life with parole, and I would have gone to trial. Mr. Camp's actions go against any warning of a minimum sentence and serve as proof, since, he asks the court to sentence me to 15 or 20yrs. For this reason I should be allowed to withdraw my plea of guilt and enter a plea of not guilty.

Strickland v Washington (466 US. 668, 104 S.Ct 2052, 80 L.Ed. 2d. 674); U.S. v Rhodes (913 F.2d 839) Boykin v Alabama (395 US. 238 S.Ct L.Ed. 2d. 274)

**5th Contention of ERROR:** Mr. Camp's mis-representation on Blind Plea to Mr. Jamieson cannot be considered sound trial strategy; infact there is no strategy at all unless he is tryin to avoid a Death Sentence Mr. Jamieson had a stronger case to proceed to trial with, than Mr. Camp had in State v Windsweedle as "County precedence" on Blind Plea for sentence of "Equal Justice."

At preliminary hearing all eye witness's testify shooter had head and faced covered with hooded sweatshirt and bandana, and they could only see shooter's eyes. In addition, witness's testify to being drunk and high on marijuana at time crime occured. (Check preliminary hearing transcripts)

Karl Wooten testified the shooter had to be white, because, he wore a white bandana; however, he wrot a statement after being arrested for giving false information and running from police, that he believed Michael Porter or "Boom" Washington comitted crime. (Both are African-American gentelmen) He later testified that at the E.P.D he had to pray over photos to make a positive indentification, and God told him it was my picture. (check preliminary hearing transcripts)

Further, in support of a Strong defense, Mr. Camp could have presented the jury with the fact that an "Angry Mob" of gang member's were outside E.P.D when Mr. Jamieson tried to leave, and this "Angry Mob" threatened to take his life if he left E.P.D. Subject to this immediate bodily harm or death Mr. Jamieson was promised police protection if he returned inside and confessed, where as a direct result of this "threat and promise" Mr. Jamieson felt the logical thing to do was to protect himself and family by saying, "I D.O I+!" Where he immediatly followed this with, "I didn't do it. I am only saying I did, so you can protect my family."

This combination is a very strong indication that Mr. Jamieson did not pull the trigger, or at the very least present the jury with Strong Reasonable Doubt. Then and only if jury convicted Mr. Jamieson, he could appeal his conviction and prove it was the product of a coerced confession and is false. Again, However, Mr. Camp did not investigate this defense or present it to Mr. Jamieson or he would have went to trial, rather, Mr. Camp's investigation ended at State v Windsweedle as county precedence and this case verses State v Jamieson is not as strong or even a viable defense to charge, when Camp can show confession is involuntary and no positive I.D.

Mr. Camp's mis-representation of State v Windsweedle as a viable defense for Blind Plea, since, Mr. Jamieson

case is virtually indistinguishable is incompetent, when they have two totally different charges and pleas, and Mr. Camp's use of this case as a defense is dificient and not reasonable assistance. If Mr. Camp would have investigated case he would have seen differences and not suggested Blind Plea, rather, he would have pursued a negotiated plea to a reduced charge and sentence as Mr. Windweedle's attorney did.

Mr. Camp's mis-representation of Blind Plea on "Equal Justice" and "County Precedence" is not supported by the facts in Mr. Jamieson's case. First, Mr. Windweedle was sented after a reduced charge on a negotd plea, not Blind Plea. Second, there is not a positive identification of shooter. Third, Mr. Jamieson's confessi was the product of an actual threat of bodily harm or death from an "angry mob" outside police station the Subsequent, to a promise for police protection Mr. Jamieson said, "I Did It!" to protect his family and self

You see if Mr. Camp had been effective counsel and done an investigation outside of State v Windweedle, he would have pursued trial, and his decision absent this investigation is ineffective and gave me an automatic life sentence without the benefit of this investigation as a viable defense. Mr. Camp's representation of this case prejudices Mr. Jamieson from the benefit of this defense infavor of trial, and he was ineffective for Pursuing his "Windweedle Defense" over the facts infavor of jury trial, and his performance is completly unreasonable and outside range of professionaly competent assistance. Boyd v Ward (179 F. 3d 904, 914)

I only pursued plea, because, of Mr. Camp's failure to investigate and present this defense, and absent these facts Mr. Jamieson's plea is absent any intelligent decision; as a result I should be allowed to withdraw my plea of guilt and proceed to trial.

U.S. Dist. Court Western District of Oklahoma v Clark (429 F. Supp 89) "Where a defendant has no defense to [redacted] the merits of charge, counsel's duty to his client does not conflict with the sense of responsibility to the court." U.S. v Jones (342 F. 2d 567)

Mr. Jamieson had a defense to the merits of his charge, but only if Mr. Camp does a diligent investigatn past State v Windweedle. Patton v U.S. "In every sense accused constitutional provision in respect of jury trial in criminal cases are for protection of the intrest of the accused, and as such they may be waived in a limited and guarded measure be waived by party sought to be benefitted by waiver. (281 U.S. 276, 50 S.Ct. 253) I was not benefited by my counsel's advice to waive right based on "Windweedle Defense," and his advice was a clear mis-representation and gave me an automatic life sentence without a fight. There was no benefit to Mr. Camp's "Windweedle Defense" over trial, and Mr. Jamieson should be allowed to withdraw his plea of guilty and proceed to trial. Strikland v Washington (466 U.S. 668, 164 S.Ct. 2052, 80 L.Ed 2d. 674) Boykin v Alabama (395 U.S. 668, 164 S.Ct. 2052, 80 L.Ed. 2d 274); U.S. v Rhodes (913 F. 2d 839)

Seamon v Snow (84 F.3d 1226, 1238) "The weight and authority of other circuits courts suffices to clearly establish law." [redacted] ( [redacted] )

6 Contention of ERROR: Michael More head was ineffective appellate counsel for not bringing to the court's attention Judge Franklin was not clear on his part to ensure Mr. Jamieson understood Life with Parole was his absolute minimum sentence. Judge Franklin uses the word "may recieve" as opposed to "will recieve," and the word may is not absolute in its meaning. Definition of May, helping verb, past might; present singular and plural May: be in some degree likly to.

Judge Franklin should have used the phrase "will recieve," since, the word will is absolute in its meaning. He was unclear in his warning to Mr. Jamieson about about Life with Parole, and did not clearly indicate to Mr. Jamieson this was his absolute minimum sentence. Rather, I believe he asks me a question, "You understand you may recieve a sentence of Life with Parole or Life without parole on this charge?"

The word may is not a warning in this question, and does not ensure Mr. Jamieson Knows he signing a Blind Plea to a Life Sentence.

Judge Franklins question leaves room for me to mis-understand my possible sentence options and believe there is a sentence I am eligble for outside this range. When the Judge used the phrase "may recieve a sentence of Life with Parole or Life without parole," he left room for Mr. Jamieson to believe, he may not recieve a sentence of Life. Since, the word may is not absolute in its meaning, and left wiggleroom for me to believe there are other optios; such as Mr. Camps mis-rep that State v Windmweedle was "County Precedence" for a 15 year sentence. The structure of the Judge's question is unclear, nor is it a warning to Mr. Jamieson that he cannot recieve any sentence less than Life. When used in this manner it is generally used to represent more than two options and leaves open the choice of may not.

Mr. Jamieson is first mis-led by Mr. Camp inregards to his sentence, then the Judge is unclear in his warning, misleading Mr. Jamieson to believe he is eligble for a sentence outside of his range of Life. In Adcox v State, the court illustrates this: "You understand you may get a sentence anywhere from 2 to 7 years?"

The Judge uses the word may in this manner because the defendant has a sentencing range of 6 years, and the Judge has a number of sentences to weigh in his decision. In my case the only decision to make was with or without parole, because, the only sentence I could get was Life, and when the Judge did not clearly warn me that Life with Parole was my minimum sentence he misled me to believe my possible sentence. King v State (1976 OKCR 103, 7, 553, P.2d 529, 532) "Is clear that the Judge has the responsibility to warn defendant the mandatory minimum sentence he can recieve, and ensure the defendant knows he cannot expect any sentence lower than mandatory min.

When you use the phrase "may recieve," you are leaving your option open to "may not recieve," since, the word may is not absolute. Being a parent I tell my kids, when we walk by candy isle, "You may have some candy when we leave..." and I say this so I have the option to decide if they can have any candy when we leave or not have candy. When the Judge used this phrase, he left me this same option that I may not recieve, leading me to believe I have options outside of Life; such as my attorney told me was precedence in my case for my sentence based on State v Windmweedle. This confused me about the consequences of my plea and put into question the intelligent nature of my decision, making the result of my plea unreliable.

This error is not harmless, as Mr. Jamieson would not have plead guilty if Judge would have clearly warned me, that I will not recieve any sentence less than minimum of Life, and I should be allowed to withdraw my plea and proceed to trial.

Rule 11 (c)(1) required that the sentencing court inform defendant of minimum sentence of charge by law U.S. v Fernandez (877 F.2d 1138, 1143) "Rule 11 is satisfied when Judge inform defendant of minimum statory sentence"

**7th Contention of ERROR:** Michael Morehead was ineffective assistance of appellate counsel for failing to raise Brian Lovell as ineffective assistance of counsel during Hearing to withdraw Mr. Jamieson's plea. Mr. Lovell failed to have Mr. Jamieson's father and Sister testify insupport of Mr. Jamieson's testimony. Jennings v State (744 P.2d 212) "When counsel knows of existance of person or persons who posses information relevant to his clients defense and fails to use due diligence to investigate that evidence, such lack of industry cannot be justified by strategic error."

This was an easy and reasonable investigation, Mr. Lovell knew Mr. Jamieson's father and Sister were at hearing and possessed evidence/information relevant to withdraw my plea. They were at hearing for that very reason. My father had spoken to Mr. Lovell prior to the hearing about his conversation with Camp and State v Windwweedle, and my 15 year sentence. Mr. Lovell had a duty to conduct a reasonable investigation, and his failure to do so falls outside range of reasonable proffesional conduct and assistance; thereby amounting to deficient representation under first prong of Strikland. (Gonzales v McKune (247 F.3d 1066)" An attorney has a duty to conduct a reasonable investigation, and failure to do so may fall outside range of reasonable proffessional conduct and assistance," "and thereby amount to deficent performance under first prong of Strikland." Hale v Gibson (227 F.3d 1298)

Not having them testify was not reasonable, Mr. Lovell would have provided a factual basis to withdraw my plea; while also providing support for my testimony. This would have informed the court Mr. Camp used State v Windwweedle as "County Precedence misleading Mr. Jamieson and family to believe by entering this plea Mr. Jamieson would recieve a sentence of 15 to 20 years like Mr. Windwweedle. Lozoya v State (932 P.2d 22) has made clear a petitioner in most instances must do more than testify that but for counsel's errors, he would not have plead guilty and would insist on going to trial. As we said in Braun, "[W]e do not think it would suprise courtroom observers to know most defendant's who recieve a death sentence after a plea would seek to withdraw plea. Accordingly, any court would cast a suspicious eye toward testimony of suspect."

When Mr. Lovell elected not to have them testify, his thought was Mr. Jamieson presented the facts. However, Mr. Jamieson's testimony on subject is suspect and needs support or factual basis according to Lozoya v State, and that support was my family's conversation with Camp. (Affidavit is attached after ERROR 3 as exhibit one. It is also on page 45 of petition and page 6 of post-conviction.)

My father and Sister's testimony is still vitale to provide the factual basis needed to withdraw my plea. I did use my father's affidavit on subject to provide a factual basis for an Evidentiary Hearing on claim. (I was first denied, then granted hearing without prior notice to prepare.) Their testimony would have diverted the "suspicious eye" off Mr. Jamieson's testimony, and focused that "suspicous eye" on Mr. Camps material representation of State v Windwweedle as "county precedence" for the court's future decision on my sentence after plea. Showing the courtroom his very actions were the very definition of precedence.

My father and Sister would have informed the court Mr. Camp did use this case as Garfield county precedence to mislead Mr. Jamieson into plea, and that use gave Mr. Jamieson and family the belief that Mr. Windwweedle's sentence was authority the court must follow in sentencing Mr. Jamieson. "Where it reasonably appears a defendant's plea of guilty was influenced by a person in apparent authority which has led defendant to believe that by entering such a plea his punishment would be mitigated, he should be permitted to withdraw his plea of guilty and enter a plea of not guilty." Snug Harbor Association v State (444 P.2d 249); Conely v State (444 P.2d 252); McCloud v State (485 P.2d 480)

This could have been satisfied with their testimony, informing the court of Camp's material missrepresentation to Mr. Jamieson that there was a previously decided case in Garfield County for Mr. Jamieson to pursue as precedence for his sentence on Blind Plea for "Equal Justice." Since, "an accused should be allowed to withdraw his plea

where any reasonable ground is offered in support of request" Freeman v State (512 P2d 236) Mr. Jamieson would have been afforded this opportunity, since, Camp's mis-representation of "county procedure" is un-reasonable and would have been supported by my father and Sister's testimony.

Because, my father and Sister's testimony was readily available and at hearing it would have provided a factual basis for the court to withdraw my plea, so it is unreasonable by Mr. Lovell not to have them testify at hearing to withdraw my plea; as a result Mr. Lovell has become ineffective assistance at hearing. Thus rendering Mr. Morehead's decision not to raise this issue on direct appeal un-reasonable, putting into question the decision made by both courts not to withdraw my plea. Then when this issue was raised and denied on Post-Conviction by the trial court, and Remanded by OCCA on Post-Conviction to the trial court, directing the District Judge to "Enter a Proper Order," he decided to grant an Evidentiary Hearing without giving Mr. Jamieson any prior notice before the date of hearing on 25 May, 2010. Resulting in an inadequate hearing and putting into question the decision by the Judge to deny and OCCA decision to Affirm. Because, in light of fact Mr. Jamieson provided the court with an Affidavit from father that Mr. Camp did materially mis-represent State v Windweedle as Garfield County Procedure to Mr. Jamieson for "Equal Justice" on Blind Plea. Resulting in a decision contrary to clearly established law.

I used state cases in argumente, since, it would have been appropriate for Brian Lovell to use at my withdraw plea hearing and Mr. Morehead to use on Direct Appeal.

For these reasons presented Mr. Jamieson should be allowed to withdraw his plea and proceed to trial.

"The Due process clause of the 14th Amendment requires a defendant knowingly and voluntarily enter plea of guilty." Boykin v Alabama (395 US 238 S.Ct. L.Ed. 2d 274)

"A plea may be involuntary when an attorney misinforms defendant the consequences of plea." US v Rhodes (913 F.2d 839)

Brady v U.S. (397 US 742, 90 S.Ct. 1463 L.Ed. 2d. 747); Strikland v Washington (466 US 668, 104 S.Ct. 2052, 80 L.Ed. 2d. 674); Harris v Oklahoma (167 P.3d 438) "A claim of ineffective assistance of trial counsel is appropriate for Post-Conviction if it has a factual basis that could not have been ascertained through excercise of reasonable diligence on or before the time of Direct Appeal" Such as claimed in next error, Michael Morehead did not seek information or testimony in support of his claim on Direct Appeal.

U.S. v Lansen ([redacted] 175 Fed Appx 236 CA 10, Utah 2006) "Post-conviction movant's un-supported contention that his trial counsel failed to investigate his case [redacted] adequatly and present witness's on behalf was insufficient to support claim of ineffective assistance of counsel, absent any claim that witness's existed who could have been favorable to his defense." What this case is absent, I have provided in my father's Affidavit, and the testimony of my sister will be similar to my father's; they were both at meeting with Camp.

**8th Contention of ERROR:** Michael Morehead was ineffective appellate counsel for failing to obtain information and affidavits from Mr. Jamieson's father and Sister in support of Claim on Direct Appeal. Jennings v State (744 P2d 212) "When counsel knows of existance of person or persons who posses information relevant to his client's defense and fails to use due diligence to investigate that evidence, such lack of industry cannot be justified by strategic error."

In my conversation with Mr. Morehead, I mentioned how I testified at my Hearing to withdraw my plea, and my father and Sister were also at Hearing to testify; however, Mr. Lovell did not have them testify, and, he, Michael Morehead should talk to my father and Sister and get affidavit's about their conversation with Camp about State v Windweedle and his alleged conversation with Lovell about a conversation Lovell had with Judge Hladik and that the Judge was inclined to sentence me in the Same manner as Mr. Windweedle.

In Mr. Morehead's Brief on Direct Appeal his claim was Mr. Jamieson's plea was not Knowing and voluntary, in support he uses Mr. Jamieson's testimony from withdraw hearing as independent support of claim, and Lozoya v State (932 P2d 22) has made clear a petitioner in most instances must do more than testify that but for counsel's errors, he would not have plead guilty and would have insisted on trial. As we said in Brown "we do not think it would suprise courtroom observers to know most defendant's who recieve a death sentence after a plea of guilty would seek to withdraw plea. Accordingly, any court would cast a suspicious eye toward testimony of suspect."

When standing alone Mr. Jamieson's testimony on subject is suspect and "any court would cast a suspicious eye on defendant's testimony that but for counsel's errors." So Mr. Morehead is obligated to obtain evidence and information from Mr. Jamieson's father and sister to be effective on Direct Appeal.

Mr. Morehead had a duty to conduct a reasonable investigation, and his failure to do so falls outside range of reasonable professional assistance, and thereby amount to a deficient representation under first prong of StricKland, because, Mr. Morehead knew of my father and sister's exist and that they possesed information to my defense. He failed to do [redacted] a [redacted] Diligent investigation into that evidence, and his lack of industry cannot be justified by strategic error. Gonzales v McKune (247 F3d 1066); Hale v Gibson (227 F3d 1298); Jennings v State (744 P2d 212)

It was not reasonable for Mr. [redacted] MoreHead not to speak to my father and Sister, he would have provided the factual basis needed to withdraw my plea and support my testimony. Informing the court Mr. Camp used State v Windweedle as Garfield County precedence mis leading Mr. Jamieson and family to believe by entering this plea Mr. Jamieson would recieve a Sentence like Mr. Windweedle, and Lozoya v State made known a petitioner in most instances must do more than testify. In order to overcome this Mr. Morehead was to obtain an affidavit from my father and Sister in order to recieve an Evidentiary Hearing where they can testify. I did use an affidavit from my father to recieve that Evidentiary Hearing on Post-Conviction; however, I was denied. Then upon OCCA remand to for the District Judge to enter a proper order, he [redacted] granted an Evidentiary Hearing, and did so without giving Mr. Jamieson prior notice before 25 May, 2010.

My father and Sister's testimony would have diverted the "Suspicious eye" off Mr. Jamieson, and focused that eye on Mr. Camp's material representation of State v Windweedle as an earlier case with authority to the future Sentence after Mr. Jamieson's plea.

Mr. Camp's use of this case as "County precedence" mislead Mr. Jamieson and family to believe it was authority for the court and they must follow since it is precedence. "Where it reasonably appears a defendant's plea of guilty was influenced by a person in apparent authority which has led defendant to believe that by entering such a plea of guilty his punishment would be mitigated, he should be permitted to withdraw his plea of guilty and enter a plea of not guilty" Sang Harbor Association v State (444 P2d 249); Lovely v State (444 P2d 252); McCloud v State (485 P2d 480)

This would have been satisfied if Mr. Morehead would have investigated and spoke to my father and Sister, providing a factual basis for an Evidentiary Hearing; to further develop claim on Direct Appeal. My father would have provided this affidavit as he did for me on Post-Conviction, since, Camp did speak to my father and Sister about Mr. Windweed

and his 15 year sentence as precedence for me to recieve the same on Blind Plea.

Since, "an accused should be allowed to withdraw his plea where any reasonable ground is offered in support of request" Freeman v State (512 P.2d 236) Mr. Jamieson would have been afforded this opportunity, since, Camp's mis-representation of "County Precedence" is un-reasonable and would have been supported by my Father and Sister's testimony.

Because, my Father and Sister's testimony was readily available and at hearing it would have provided a factual basis for the court to withdraw my plea, so it is unreasonable by Mr. Morehead not to speak to them an obtain affidavit's about their conversation with Camp, as a result he became ineffective appellate counsel. Thus rendering the decision made not to withdraw my plea questionable, and when issue was [redacted] Denied on Post-Conviction by trial court, and Remanded by OCCA to the trial court directing the District Judge "to enter a proper order," he decided to grant Evidentiary Hearing without giving Mr. Jamieson any prior notice before the date of hearing on 25 May, 2010. Resulting in an inadequate hearing and putting into question the decision by the Judge to deny and OCCA decision to Affirm. Because, in light of fact Mr. Jamieson provided the court with an Affidavit from father that Mr. Camp did materially mis-represent State v Windenweedle as Garfield County Precedence for Mr. Jamieson, resulting in a decision contrary to clearly established laws.

I used State cases in arguement, since, it would have been appropriate for Mr. Morehead to use on Direct Appeal. For these reasons presented Mr. Jamieson should be allowed to withdraw plea and proceed to trial.

"The Due Process Clause of the 14th Amendment requires a defendant knowingly and voluntarily enter plea of guilty." Boykin v Alabama (395 U.S. 238 S.Ct. L.Ed. 2d 274)

"A plea may be involuntary when an attorney mis informs defendant of the consequences of plea." U.S. v Rhodes (913 F.2d 839)

Brady v U.S. (397 U.S. 742, 90 S.Ct. 1463 L.Ed. 2d. 747); Strickland v Washington (466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674)

Harris v State (167 P.3d 438) "[redacted]"

U.S. v Larsen (175 Fed. Appx. 236 CA 10, Utah 2006) "Post-Conviction movant's unsupported contention that his trial counsel failed to investigate his case adequatly and present witness's on behalf was insufficent to support claim of ineffective assistance of cousel, absent any claim that witness's existed who could have been favorable to his defense." What this case is absent, I have provided. My Father and Sister can testify to vital information about Camp's use of State v Windenweedle as "County Precedence" for me on plea.

**9th Contention of ERROR:** Evidentiary Hearing on 25 May, 2010 was held without giving Mr. Jamieson any notice from the court granting hearing, as a result of no notice the hearing was in violation of Due Process. "Due process of law... does not allow a hearing to be held... without giving [petitioner] timely notice, in advance of hearing" In re Gault 387 U.S. 1, 33-34, 87 S.Ct. 1428, 1446-1447, 18 L.Ed. 2d 527 (1967) Taken from Stephens v Kemp (469 U.S. 1043, 105 S.Ct. 530)

O.C.C.A's Remand stated, "As the District Court has not issued a proper order in this matter, the case is Remanded to the District Court. The District Judge shall enter a proper order setting forth findings and conclusions regarding each issue presen

There was nothing in the order to Remand I could interpret as the District Court must hold an Evidentiary Hearing, only they must "enter a proper order." I filed an "Objection" in this matter, however, the "objection" was filed in 23 day not 21. Mr. Jamieson was never given any notice about the Evidentiary Hearing on 25 May, 2010. "There is no doubt that the due

process clause requires a minimum that adjucations affecting an individuals Life, liberty, or property be preceded by (1) notice reasonably calculated, under all circumstances to inform the aggrieved party of the pendency and nature of the procedures against him and (2) a meaningful hearing appropriate to the nature of the case." Armstrong v Manzo (380 U.S. 545, 550, 85 S.Ct. 1187, 1190 14 L.Ed. 2d 62(1965); quoting Mullane v Central Hanover Bank & Trust Co. (339 U.S. 306, 313, 70 S.Ct. 652, 656 94 L.Ed. 865 (1950); Stephens v Kemp (469 U.S. 1043, 105 S.Ct. 530) "The court must actually inform the petitioner that he must tender his evidence and must give him reasonable opportunity to do so."

Mr. Jamieson was woke up under color of night without notice of court appearance on 24 May, 2010 and told by D.C.F Staff to gather my belongings, I was leaving. They did not give me any information about my move, it was against security protocol, and I did not know I was going to Garfield County for Evidentiary Hearing.

From the best of my understanding, I was waiting 30 days for the District Judge to "enter a proper order," not for an Evidentiary Hearing. I believe instead of entering a proper order, the Judge decided to hold the hearing, however, he did so without giving me any notice "reasonably calculated" prior to 25 may, 2010. I am very grateful for this hearing, but it was not "Full, Fair, or adequate," as I explained at the begining of hearing I Know nothing about the Evidentiary Hearing and not prepared. I had to request the court's copy of my Post-Conviction and Request for Evidentiary Hearing from the Judge, and The first issue I addressed was Detective Skaggs and Mr. Camp were not their to testify. I specifically mentioned I needed their testimony to address my ineffective trial counsel claim in Request. In addition, I was not able to properly Expand Record of Appeal to additional evidence in trial courts record Polygraph waiver and transcript, Preliminary Hearing transcript, and Hearing to Suppress Confession Transcripts. These are all needed to address ineffective investigation by trial counsel, and how it affected the intelligent decision made on plea by Mr. Camp and Mr. Jamieson.

It cannot be said the Judge entered a proper order, since, he made decision based on an inadequate hearing, and did not give Mr. Jamieson notice reasonably calculated before 25 may, 2010 of his decision to grant request for Evidentiary hearing.

O.C.C.A's decision to Affirm is without the evidence they orderd the District Judge to address. This is contrary to their order to the District Judge to "address each issue presented." The District Judge cannot "address each issue presented" without giving Mr. Jamieson timely notice to present it.

Mr. Jamieson's Father was only at Hearing because I was able to call a close family friend the night prior at Garfield County Jail. She was able to call my family and tell them I had a court date, and he went online to find out the time. For the most part my family tries to arrive early to my hearings, because, if the deputy is willing they can give a hug and kiss, and speak with me until the Judge enters courtroom. When the Judge entered on 25 may, 2010 my mother took my children and left and my father stayed. My father and I Knew nothing about this hearing or that he would have the opportunity to testify.

The Judge asked my Father questions, but not about his Affidavit and Camps use of State v Windsweedle as precedence.

If I would have had notice I would have brought my questions for my Father and Sister, Det. Skaggs, Polygraph Officer and Camp. The questions for my Father and Sister revolve around their conversations with Camp and his use of Mr. Windsweedle case as precedence in Garfield County my future sentence on a plea, and how they relayed those conversations to me. In addition, the conversation Camp had with my Dad, about Camp's conversation with Lovell, and Lovell's conversation with the Judge, and the Judge was inclined to sentence me in a manner similar to Mr. Windsweedle. My questions for Det. Skaggs and Polygraph Officer deal with polygraph and the Angry mob used as a weapon to overbear

Mr. Jamieson's will to leave E.P.D after he terminated polygraph, the testimony Camp should have obtained at my Suppression Hearing if he had done an investigation to suppress confession or for trial.

Mr. Jamieson has been given an Evidentiary Hearing in State court, however, it was not "Full, fair or adequate. Mr. Jamieson proceeded in a manner that was reasonable under interpretation of Oklahoma's everchanging Rule 3.11 on Evidentiary Hearings, so it cannot be considered that he did not give "clear and convincing evidence" to demonstrate a strong possibility trial counsel was ineffective. There was an Evidentiary Hearing on Post-Conviction claims, but, subsequent to having zero notice to prepare from the court the hearing was not Full, fair or adequate.

As a result of this inadequate [redacted] hearing Mr. Jamieson was not able to subpoena witness's or expand record of appeal to additional evidence in Original Record of trial court not given to OCCA. This additional evidence is proof of Camp's ineffective investigation in pursuit of trial, and how that lack affected his decision to plea competently. In addition, [redacted]it was evidence the trial Judge needed to address in denying each issue presented against Camp's ineffective assistance, since, these claims are against his investigation for and representation at Suppression Hearing. How this lack of results in his decision to have Mr Jamieson Blind Plea instead of trial, and effected the Judges decision on confession absent Det. Staggs, Polygraph officer and Mr. Jamieson's testimony about the Angry Mob used as a weapon to coerce Mr. Jamieson's confession. This decision on confession effected Mr. Camp's and Mr. Jamieson's decision on plea over trial and is based on Camps lack of investigation and representation at hearing.

This decision was made without all the facts and predicated on Camp's ineffective assitance, he knew witness's existed and could testify to evidence vitale in Judge decision al client's defense for trial. Jennings v State (744 P.2d 212) The Judge was without this evidence in favor of suppressing confession, and it puts into question not only the Judges decision but the voluntary and intelligent decision by Mr Jamieson to plea had Camp properly addressed this evidence at hearing. Since, they would have informed Mr Jamieson there are several cases where coerced confession were admitted to trial, then overturned on appeal, and his best option is trial.

This performance by Camp is the direct result of State v Windenweedle as Garfield County Precedence for his defense of Mr. Jamieson to take plea immediatly following hearing to Suppress on 22 January, 2008. Where Camp uses Mr. Jamieson's confession to mislead him trial was not the best available option, and would result in automatic Life sentence when confession was presented to jury. If he wanted to avoid this Life sentence, State v Windenweede was Garfield County Precedence for a 15 years Prison sentence on Blind Plea in pursuit of "Equal Justice."

For Mr. Jamieson's Factual Basis on this claim, he needed his Father and Sister to testify about their conversations with Mr. Camp. The lack of this testimony at my Withdraw plea hearing is why Mr. Lowell was ineffective, when he knew their testimony existed. Mr. Morehead was ineffective because I mentioned this to him in our visit, and he should speak to them and get an affidavit about their conversation with Camp, in support of Direct Appeal. Mr. Morehead used only my testimony, when he knew my father and Sister had information that would provide a factual basis to withdraw my plea on Direct Appeal.

These allegations are true and not contravened by the record and entitle me to relief. The Fact that I was not given notice or cousel to properly offer my [redacted] evidence into the record militates against the government. This was my only chance to properly introduce my evidence, and is a critical stage in my criminal process. My conviction and sentence are not final and the 6th Amendment states, "In all criminal proceedings, the accused shall enjoy the

the right... to have assistance of cousel for his defense. That right is indispersable to the fair administration of our advusial system of criminal justice." *10 Maine v Moulton (474 U.S. 159, 168, 106 S.Ct. 477 88 L.Ed. 2d. 481 (1985) "Recognizing that the right to counsel is shaped by the need of assistance of counsel, we have foun that the right attaches to all critical stages."

The ultimate question is whether hearing afforded Mr. Jamieson was in fact a "fair and meaning full Evidentiary Hearing," absent any notice given to Mr. Jamieson prior to his arrival to hearing on 25 May, 2010.

In conclusion, Mr. Jamieson believes the Evidentiary Hearing on 25 May, 2010 was meaningless, and counsel should have been granted at this critical stage in my criminal process to head off any furthur errors. I believe under these circumstances an Evidentiary Hearing is required to fully and fairly resolve serious questions concerning the violation of my fundementally statutory and constitutional rights of incarceration; with these premises considerd I, respectfully ask this court to enter an order granting an Evidentiary Hearing on my Habeas Petition. Where counsel and advance notice will be given to ensure there are no furthur errors on this matter.

Nguyen v Reynolds (131 F.3d 1340) "Presentation of correctness given to State court findings in federal habeas proceedings do not apply, and Federal court must grant Evidentiary Hearing, if Petitioner did not recieve full, fair, and adequate hearing in State court proceeding on matter sought to be raised in habeas petition."

Galloway v Howard (624 F. Supp. 2d 1305) "If petitioner does [redacted] diligently attempt to develop factual basis for his habes claim in State court, the federal court should ordinarily conduct an Evidentiary Hearing if proof of the allegation would justify Habeas Relief."

In the event this court has seen enough evidence that Mr. Camp was ineffective and misrepresented alternitive course of action thru State v Windmuller as County Prosedure for a 15 year sentence, I ask this court to withdraw my guilty plea and proceed to trial.

I declare under penalty of perjury that the foregoing is true and correct and that petition was placed in mailing system on ______________.

Jeremiah Jamieson #573217