IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JEREMIAH D. JAMIESON,            )
                                 )
            Petitioner,          )
                                 )
                                 )      CIV-10-1176-M
v.                               )
                                 )
JUSTIN JONES, Director,          )
                                 )
            Respondent.          )

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for

Murder in the First Degree entered in the District Court of Garfield County, Case No. CF-

2007-227, following his guilty plea. Respondent has responded to the Petition and filed the

relevant state court records. The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following

reasons, it is recommended that the Petition be denied.

I. Background

On March 30, 2007, Petitioner was charged in the District Court of Garfield County,

Oklahoma, Case No. CF-2007-227, with the offense of Murder in the First Degree in the

shooting death of the victim, Mr. Perry. Response, Ex. 9, at 1. At a preliminary hearing

conducted on June 20, 2007, Petitioner appeared with his attorneys, Mr. Lovell and Mr.

1

Camp. Response, Ex. 16.  During the hearing, eyewitnesses testified that Petitioner shot Mr.

Perry, and he was bound over for trial. Id. at 118, 187.  On January 22, 2008, a hearing was

conducted on Petitioner's motion to suppress his confession. Supplemental Response, Ex.

1.  At the conclusion of the hearing, the motion was denied.  Id.  Petitioner entered a "blind"

plea of guilty on the same date to the charge of Murder in the First Degree.  Response, Ex.

17 (partial Transcript of Plea Conducted January 22, 2008).

At the plea proceeding, Petitioner appeared with his attorneys, Mr. Camp and Mr.

Corey.  Petitioner admitted that he shot the victim, Mr. Perry, and that he was entering the

plea voluntarily and without being forced, threatened, or coerced. Response, Ex. 1 (Plea of

Guilty Summary of Facts, file-stamped January 22, 2008); Response, Ex. 17 (partial

Transcript of Plea Conducted January 22, 2008), at 2.    The record demonstrates that

Petitioner was advised of and admitted that he understood the rights he was waiving by

entering the plea and the possible punishment for his offense.  Petitioner stated that he

understood the only punishment for the offense was a sentence of either life without the

possibility of parole or life with the possibility of parole. Response, Ex. 17, at 2.  Petitioner

stated he understood he was entering a "blind" plea with no negotiated plea agreement as to

sentencing. Response, Ex. 17, at 5.  Petitioner testified that his defense attorneys had made

no guarantees to him concerning a possible sentence. Response, Ex. 17, at 5-6. Petitioner was

questioned by his attorneys and by the presiding judge concerning his understanding of the

effects of the plea, and Petitioner stated he understood that under Oklahoma law "life is

considered forty-five years," that murder in the first degree is "an eighty-five percent crime,"

and that the minimum term of imprisonment he could serve for his murder conviction was 38 1/4 years prior to parole. Response, Ex. 17, at 6-7. The trial court accepted the plea and set the matter for sentencing. At his sentencing proceeding conducted on April 3, 2008, Petitioner appeared with his attorney, Mr. Camp. Response, Ex. 18 (partial Transcript of Sentencing of Jeremiah Daniel Jamieson). Petitioner's attorney argued in mitigation of sentencing, and Petitioner was sentenced to a term of imprisonment of life with the possibility of parole. Response, Ex. 2 (Judgment and Sentence); Response, Ex. 18, at 101, 107.

On April 14, 2008, Petitioner, through his attorney, Mr. Lovell, filed a motion to withdraw his guilty plea. In this motion, Petitioner asserted that his plea was not entered knowingly and voluntarily because he "did not fully understand the potential consequences of entering [a] 'blind plea.'" Response, Ex. 3. A hearing was conducted on the motion to withdraw on August 6, 2008. Response, Ex. 19 (partial Transcript of Hearing on Motion to Withdraw Plea). Following the hearing, the district court denied the motion to withdraw, and Petitioner appealed his conviction. Response, Ex. 4 (Order Denying Defendant's Motion to Withdraw Plea); Ex. 5 (Brief of Petitioner, Jamieson v. State, No. C-2008-785, Oklahoma Court of Criminal Appeals).

In his certiorari appeal, Petitioner, represented by new court-appointed counsel, asserted that his plea was not knowingly and voluntarily entered because he was not sufficiently informed as to the consequences of his plea and one of his defense attorneys, Mr. Camp, had made false promises of the sentence he would receive in exchange for his guilty

plea. Response, Ex. 5. Specifically, Petitioner relied on his testimony at the hearing on the motion to withdraw his plea in which he testified that his defense attorney, Mr. Camp, promised him before he entered his plea that he would "get pretty much 15 years" if he entered a blind plea and that Petitioner had just "answered [the attorney's] questions the way he told me to answer them" during the plea proceeding. Response, Ex. 5, at 3-6. In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") denied certiorari and expressed its finding that Petitioner's plea was "knowing, intelligent, and voluntary." Response, Ex. 6 (<u>Jamieson v. State</u>, No. C-2008-785 (Okla. Crim. App. Apr. 15, 2009)(Summary Opinion Denying Certiorari)).

On January 28, 2010, Petitioner filed an application for post-conviction relief in the District Court of Garfield County, in which he asserted that he was denied effective assistance of trial counsel and was also denied effective assistance of appellate counsel. Response, Ex. 7. The district court denied the application, and Petitioner appealed. Response, Exs. 11, 12. The OCCA remanded the matter to the district court to address Petitioner's claim of ineffective assistance of appellate counsel. Response, Ex. 14. On May 25, 2010, the district court held an evidentiary hearing in Petitioner's post-conviction proceeding. Response, Ex. 20 (partial Transcript of Evidentiary Hearing). Following this hearing, the district court denied the application (this opinion does not appear in the record presented by Petitioner or Respondent), and Petitioner appealed the decision. On June 17, 2010, the OCCA entered an order affirming the district court's denial of post-conviction relief. Response, Ex. 15. In its order, the OCCA specifically found that Petitioner's claim

of ineffective assistance of appellate counsel was without merit.

II. Petitioner's Claims

In the instant Petition, Petitioner asserts in grounds one and two that he was denied constitutionally effective assistance of trial counsel because his defense counsel, Mr. Camp, inadequately researched and presented a motion to suppress Petitioner's confession. Petitioner raised this claim in his post-conviction application, and Petitioner alleges that his appellate counsel provided constitutionally ineffective assistance because he failed to raise this claim in Petitioner's certiorari appeal.

In grounds three and four, Petitioner asserts that he was denied constitutionally effective assistance of trial counsel and his plea was involuntarily entered without an understanding of the nature of the charges and consequences of the plea. As support, Petitioner contends that his defense attorney, Mr. Camp, did not advise Petitioner that he was only eligible for a mandatory minimum sentence of life with parole on his blind plea to the first degree murder charge and misinformed Petitioner that his plea "would result in a similar sentence as Mr. Winderweedle." Petition, at 11. Petitioner contends that he raised this claim in his post-conviction application and that he was denied effective assistance of appellate counsel because his appellate counsel did not assert this claim in his certiorari appeal.

In ground five, Petitioner contends that he was denied constitutionally effective assistance of trial counsel because Mr. Camp advised Petitioner to enter a blind plea despite the existence of an "absolute and viable defense" to the charge related to the reliability of eyewitness testimony. Petition, at 15. Petitioner raised this claim in his post-conviction

application, and he asserts that he was denied effective assistance of appellate counsel because his appellate counsel did not assert this claim in his certiorari appeal.

In ground six (presented out of sequence), Petitioner contends that his plea was not knowingly and voluntarily entered because the judge who presided over the plea proceeding did not clearly advise Petitioner that the minimum sentence he could receive was life with parole. Petitioner asserts that he raised this claim in his post-conviction application and that he was denied effective assistance of appellate counsel because his appellate counsel did not assert this claim in his certiorari appeal.

In ground seven, Petitioner contends that he was denied constitutionally effective assistance at the hearing on the motion to withdraw his plea because Mr. Lovell did not solicit the testimony of Petitioner's father and sister in support of Petitioner's testimony. Petitioner raised this claim in his post-conviction application, and he asserts that he was denied effective assistance of appellate counsel because his appellate counsel did not assert this claim in his certiorari appeal.

In ground eight, Petitioner contends that he was denied constitutionally effective assistance of appellate counsel because his appellate counsel failed to assert the claims of ineffective assistance of trial counsel urged by Petitioner in grounds three, four, and seven herein and "fail[ed] to obtain information and affidavits from Mr. Jamieson's father and sister" in order to support such a claim in the certiorari appeal. Petition, at 20. Petitioner raised this claim in his post-conviction application.

In ground nine, Petitioner contends that he was not provided reasonable notice of the

district court's decision to grant an evidentiary hearing in his post-conviction proceeding, and he was therefore unable to introduce evidence or have witnesses available to testify at the hearing in support of his post-conviction application. Petitioner contends that he asserted this claim in his post-conviction appeal.

III. Standard of Review

Petitioner's claims of an invalid plea in grounds three, four, and six were denied by the OCCA on their merits. Therefore, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard for reviewing these claims. Under the AEDPA, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413.

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams,

529 U.S. at 407. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)(<em>per curiam</em>). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." <u>Holland v. Jackson</u>, 542 U.S. 649, 652 (2004)(<em>per curiam</em>)(citations omitted).

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, AEDPA mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

IV. <u>Validity of the Plea</u>

Under the Due Process Clause, a guilty plea constitutes a knowing and voluntary plea if it was entered with a "full understanding of what the plea connotes and of its consequence[s]." <u>Boykin v. Alabama</u>, 395 U.S. 238, 244 (1969). <u>See</u> <u>Cunningham v. Diesslin</u>, 92 F.3d 1054, 1060 (10th Cir. 1996)(guilty plea "must be knowing and the product of a deliberate, intelligent choice," and plea will be upheld if circumstances demonstrate defendant "understood the nature and consequences of the charges and the defendant

voluntarily chose to plead guilty"). "The defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences." <u>United States v. Hurlich</u>, 293 F.3d 1223, 1230 (10th Cir. 2002).

Petitioner contends in grounds three, four, and six that his plea was not entered knowingly and voluntarily because at the time of the plea he did not have a complete understanding of the possible minimum sentence he could receive. Petitioner also alleges that Mr. Camp misinformed him that his blind plea to the first degree murder charge "would result in a similar sentence" to that entered in another criminal case, <u>State v. Winderweedle</u>, District Court of Garfield County, Case No. CF-1999-378.

According to Petitioner's brief submitted in his certiorari appeal, Petitioner testified at the hearing conducted on the motion to withdraw his plea that Mr. Camp had promised Petitioner he would receive a 15-year or 20-year sentence. Response, Ex. 5, at 4. Petitioner argued in his certiorari appeal that

> [a]t the least, the record suggests that Mr. Camp discussed [Petitioner's] case with his client in such juxtaposition with the <u>Winderweedle</u> case so as to convey a level of certainty as to a sentence wholly unattainable. At the worst, Mr. Camp told his client that he was certain that the judge would follow the teaching of the <u>Winderweedle</u> case and impose a sentence of fifteen or twenty years, but that such certainty could not be clearly stated on the record.

Response, Ex. 5, at 9-10.

Consistent with Petitioner's own statements in open court during the plea proceeding, Mr. Camp testified at the motion to withdraw hearing that he made no promises to Petitioner

as to sentencing.  Response, Ex. 19, at 27-28.  Mr. Camp testified that he only advised Petitioner prior to the plea that at Petitioner's sentencing counsel would "bring to the court's attention the similarities of those two cases and how Mr. Winderweedle got 15 years and why I thought it was appropriate for him, [Petitioner], to get . . . potentially [a sentence] somewhere in that range" and "the argument that I told him I was going to make at the sentencing was the similarities and why we thought that that sentence would be appropriate . . . ." Response, Ex. 19, at 27-28.

At Petitioner's sentencing, Mr. Camp did indeed argue in mitigation of sentencing that Petitioner's sentence should be partially suspended "similar" to the sentence imposed by the trial court in a previous case, "State versus Winderweedle," involving a defendant who was "in the military" like Petitioner, who had "shot a gentleman in a packed house at a party," and who received a sentence of 15 years of imprisonment. Response, Ex. 18, at 100-101. Petitioner's attorney requested "the Court not to impose life in prison with or without parole" and, instead, "ask[ed] the Court to impose some reasonable" sentence of "whatever amount of prison time and a long period of suspension." Response, Ex. 18, at 101.

Contrary to Petitioner's assertions that he misunderstood or was misinformed concerning the possible sentence he could receive as a result of his entry of a guilty plea, the record of Petitioner's plea proceeding reflects Petitioner's statement in open court that he understood he could be sentenced to either a term of life imprisonment with parole or a term of life imprisonment without parole.  Although Petitioner was asked during the plea proceeding if he had any questions, Petitioner stated that he did not. Response, Ex. 17, at 5.

Petitioner also stated in open court that his defense attorneys had made no promises to him and had "no idea" what sentence the presiding judge would impose for the murder conviction. Response, Ex. 17, at 5. Finally, the presiding judge advised Petitioner during the plea proceeding that in Oklahoma a life sentence "is considered forty-five years" and because of Oklahoma's "eighty-five percent" law[1] "basically thirty-eight and a quarter years is the minimum" term of imprisonment Petitioner could receive at sentencing. Response, Ex. 17, at 6-7. When Petitioner was asked by the presiding judge if he understood these consequences of his blind plea, Petitioner responded affirmatively. Response, Ex. 17, at 7.

The plea colloquy in Petitioner's plea proceeding was thorough and included specific inquiries concerning Petitioner's understanding of the consequences of Petitioner's blind plea, including the possible sentence he could receive. Petitioner's statements in open court at his plea proceeding "carry a strong presumption" of truthfulness. Blackledge v. Allison, 431 U.S. 63, 74 (1977). Subsequent "contentions that in the face of the record are wholly incredible" should be summarily dismissed. Id. Nevertheless, the Court in Blackledge admonished that federal courts not "adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." Id. at 75. In Blackledge,

---

[1]In Oklahoma, certain convicted defendants, including those convicted of first degree murder, must serve eighty-five percent of their sentences before becoming eligible for parole. Okla. Stat. tit. 21, § 13.1.

the Supreme Court concluded that the habeas petitioner's petition should not have been summarily dismissed where the petitioner provided "specific factual allegations" of an unkept promise inducing his guilty plea and there was no record as to what statements the petitioner, his lawyer, or the prosecutor made regarding promised sentencing concessions and no record of the sentencing hearing. Id. at 75-77.

The OCCA found that Petitioner's plea was intelligently and voluntarily entered. Although there may be circumstances, as the Supreme Court recognized in Blackledge, in which a defendant can overcome the presumption of truthfulness attached to statements made in open court during a plea proceeding, the OCCA's decision in this case is not contrary to or an unreasonable application of the Boykin/Blackledge standard. Petitioner was adequately informed during the plea proceeding that there was no plea agreement as to sentencing and that sentencing was within the presiding judge's discretion. Petitioner testified that no promises had been made to him concerning the sentence that would be imposed by the trial court, that he understood he could be sentenced to only a sentence of life without parole or life with parole, and that at sentencing the term of imprisonment he could receive would not be less than 38 1/4 years. Petitioner signed a Plea of Guilty Summary of Facts form in which he affirmed that he understood the nature and consequences of the proceeding, understood the charge and the range of punishment for the offense, understood each of the rights he was waiving by entering a plea, had been advised by his attorneys regarding the charge and any defense he might have had to the charge, understood there was no plea agreement, was entering the plea of his own free will and without any coercion or compulsion or promises

12

of any kind by anyone, and that he read, understood, and completed the form. Response, Ex. 1.

In the face of this overwhelming evidence demonstrating that Petitioner's plea was intelligently, knowledgeably, and voluntarily entered without threat, promise, or coercion, Petitioner presents only vague assertions that his defense attorney promised he would receive a sentence of 15 or 20 years of imprisonment because Petitioner's case was similar to another case. Petitioner also vaguely alleges that Mr. Camp had advised him that another defense attorney, Mr. Lovell, "allegedly told [Mr.] Camp that he, Mr. Lovell, had spoken with [the district judge] and that [the district judge] was inclined to sentence [Petitioner] to fifteen years based on the results from another case, the <u>Winderweedle</u> case." Response, Ex. 5, at 4 (Brief of Petitioner on certiorari appeal).

Petitioner argues in his responsive pleadings herein that Mr. Camp assured him that he "was eligible for anything up to Life without parole, but [he] had nothing to worry about because Mr. Winderweedle's sentence was precedence [sic] for my sentence to follow on plea." Petitioner's Response (Doc. # 29), at 2. An attorney's "erroneous sentence estimate does not render a plea involuntary." <u>United States v. Silva</u>, 430 F.3d 1096, 1099 (10th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1164 (2006). <u>See</u> <u>also</u> <u>Cunningham</u>, 92 F.3d at 1061 (attorney's erroneous sentence estimate or prediction of parole does not render plea unknowingly made); <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993)("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance raising to the level of ineffective assistance of counsel."), <u>cert. denied</u>, 510 U.S. 1184 (1994). In this

case, in light of the Petitioner's statements in open court and the record of the plea proceeding, Petitioner's plea is not rendered involuntary by his attorney's unattained sentencing estimation. Other circumstances point to the voluntary and intelligent nature of the plea. Petitioner was present at the preliminary hearing when eyewitnesses identified him as the shooter, Petitioner's motion to suppress his confession had been denied, and Petitioner has admitted that his plea was entered on the Friday immediately before the week his trial was set to begin. Petitioner's Response (Doc. # 29), at 1. Thus, Petitioner was obviously motivated to enter the blind plea in order to avoid a trial and possible sentence of life imprisonment without parole. There is nothing in the record of the plea or sentencing proceedings to indicate that his defense attorney had any undue influence over Petitioner. Petitioner's answers were straightforward and made without any indication of hesitation or confusion.

Petitioner's defense counsel appropriately argued at the sentencing proceeding that the trial court impose a term of imprisonment that included suspension of a portion of the sentence. See Okla. Stat. tit. 22, § 991a(A)(1); see also Kelso v. State, 737 P.2d 1225, 1226 (Okla. Crim. App. 1987)(trial judge has authority to suspend a life sentence for first-degree murder conviction). However, the argument was not successful. Petitioner concedes in his responsive pleading that Mr. Camp only advised Petitioner that the Winderweedle case provided a precedent for a similar sentence. Petitioner's Response (Doc. # 21), at 2, 3, 4. Petitioner contends that Mr. Camp "used precedence [sic], and that was a guarantee." Id. at 4. However, Petitioner's subjective belief that he would receive a similar sentence to that

imposed in another criminal proceeding does not demonstrate ineffective assistance of trial counsel. Petitioner has not shown that the OCCA's decision in his certiorari appeal that his plea was knowing and voluntarily entered was contrary to or an unreasonable application of the governing Boykin/Blackledge standard. Therefore, Petitioner is not entitled to relief concerning his claims in grounds three, four, and six.

V. Ineffective Assistance of Counsel

In grounds one through five and seven of the Petition, Petitioner contends that he was denied his Sixth Amendment right to the effective assistance of trial counsel. Petitioner concedes that he did not raise these Sixth Amendment claims in his certiorari appeal from his conviction and that he first raised the claims in his post-conviction application. In the OCCA's decision affirming the denial of Petitioner's post-conviction application, the OCCA recognized that the trial court had found Petitioner's ineffective assistance of trial counsel claims were barred by the doctrine of *res judicata* because they were asserted in his motion to withdraw the plea. The OCCA then found that "[a]ll issues previously ruled upon by this Court are *res judicata*, and all issues not raised in the direct appeal, which could have been raised, are waived." Response, Ex. 15, at 2. Petitioner did not assert a claim of ineffective assistance of trial counsel in his certiorari appeal. Although the OCCA's decision is not entirely clear in this respect, it appears that the OCCA determined Petitioner's Sixth Amendment claims of ineffective assistance of trial counsel were procedurally barred for purposes of post-conviction review due to Petitioner's failure to show cause for not raising the claims in his certiorari appeal. Under Oklahoma law, "[t]he only issues that may be

15

raised in an application for post-conviction relief are those that . . . [w]ere not and could not have been raised in a direct appeal." Okla. Stat. tit. 22, § 1089(C). With respect to Petitioner's claim of ineffective assistance of appellate counsel, the OCCA found the claim was without merit by referring to its previously-established standard that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not required to advance every cause of argument regardless of merit." Response, Ex. 15, at 2 (citing Cartwright v. State, 708 P.2d 592 (Okla. Crim. App. 1985)).

On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground, unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice. Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998).

"'A state court's finding [of a procedural default] is considered independent if it is separate and distinct from federal law.'" Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995)(quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994), cert. denied, 515 U.S. 1135 (1995)(internal quotations omitted)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" Id. (quoting Brecheen, 41 F.3d at 1353)(internal quotations omitted). Generally, the OCCA's application of its procedural bar rule in denying post-conviction relief is both independent of federal law and an adequate state ground for the court's decision. See Johnson v.

Champion, 288 F.3d 1215, 1227 n. 3 (10th Cir. 2002); Duvall v. Reynolds, 139 F.3d 768, 797 (10th Cir.), cert. denied, 525 U.S. 933 (1998). However, the Tenth Circuit Court of Appeals has "repeatedly questioned whether this Oklahoma procedural rule, requiring ineffective assistance of counsel claims to generally be brought on direct appeal, can be deemed adequate and independent to bar habeas review." Fairchild v. Workman, 579 F.3d 1134, 1141 (10th Cir. 2009)(quotations omitted). Oklahoma's procedural bar rule is considered an adequate basis for the OCCA's decision not to review a claim of ineffective assistance of trial counsel so long as the state's procedures (1) allow the petitioner an opportunity to consult with separate counsel on appeal in order "to obtain an objective assessment of trial counsel's performance" and (2) either the claim could have been resolved on the trial record alone or the state provided a procedural mechanism on direct appeal for the petitioner to adequately develop the factual basis of the ineffective assistance claim. Cannon v. Mullin, 383 F.3d 1152, 1172-1175 (10th Cir. 2004), cert. denied, 544 U.S. 928 (2005). Accord, Fairchild, 579 F.3d at 1142; Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998). In other words, the Oklahoma procedural bar rule "will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claims can be resolved on the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied." Snow v. Sirmons, 474 F.3d 693, 726 n. 35 (10th Cir. 2007).

In this case, Petitioner had different counsel for his certiorari appeal. Thus, the first requirement for applying the procedural bar doctrine is satisfied. At least one of Petitioner's

claims of ineffective assistance of trial counsel is based on information that does not appear in the state court record. Therefore, the Court must consider whether the OCCA had an adequate procedural mechanism for raising Petitioner's Sixth Amendment claims on appeal. The OCCA has adopted a rule allowing a defendant to request an evidentiary hearing on appeal "[w]hen an allegation of the ineffective assistance of trial counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial." Okla. Stat. tit. 22, ch. 18, app., Rule 3.11(B)(3)(b). However, the Tenth Circuit has recognized that "Oklahoma rarely, if ever, remands cases for such a hearing." <u>Snow</u>, 474 F.3d at 726 n. 35. Petitioner has not alleged that Rule 3.11(B)(3)(b) is inadequate or is not evenhandedly applied, and he has therefore failed to demonstrate the inadequacy of Oklahoma's procedural mechanism for raising ineffective assistance claims on appeal. Consequently, Petitioner's state court procedural default of his claims of ineffective assistance of trial counsel bars federal habeas review of the same claims unless Petitioner demonstrates cause excusing the default and actual prejudice stemming from the default.

"'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" <u>Steele v. Young</u>, 11 F.3d 1518, 1522(10th Cir. 1993)(quoting <u>Coleman</u>, 501 U.S. at 753). Petitioner contends that ineffective assistance of appellate counsel excuses his state court procedural default of his Sixth Amendment ineffective assistance of trial counsel claims (and he also raises a separate claim of ineffective assistance of appellate counsel in ground eight). "Attorney error amounting to constitutionally

ineffective assistance of counsel constitutes 'cause' for a procedural default." Hickman, 160 F.3d at 1272. "Because the same legal standards govern [a habeas] petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the reviewing court] must determine whether [the] petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." Id. at 1273.

The OCCA did not address the merits of Petitioner's underlying claims in rejecting his ineffective assistance of appellate counsel claim. The OCCA has been criticized in the past for not properly applying the governing Strickland standard to claims of ineffective assistance of appellate counsel. See Cargle v. Mullin, 317 F.3d 1196, 1202-1205 (10th Cir. 2003). The court in Cargle noted that the OCCA had followed a truncated version of the Strickland test which enabled the OCCA "to reject appellate ineffectiveness allegations *without any assessment of the merits of underlying predicate claims*, so that the OCCA ha[d] been able to declare that a 'failure to raise even a meritorious claim does not, in itself, constitute deficient performance.'" Id. at 1204 (emphasis in original)(quoting Slaughter v. State, 969 P.2d 990, 996 (Okla. Crim. App. 1998)).

In Cargle, the Tenth Circuit explained that it is "clearly wrong, as a matter of federal law, to require as a necessary condition for relief under Strickland, something beyond the obvious merit of the omitted claim, ... and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law." Id. at 1205. Despite this clear explanation of federal law and the Tenth Circuit's

repudiation of the same standard applied by the OCCA in Petitioner's post-conviction appeal, the OCCA "deviated from the controlling federal standard . . . [and its decision] is [therefore] not entitled to deference." Id. Respondent's assertion to the contrary in his responsive briefs, neither of which address the Cargle decision and its application herein, is without merit.

For Petitioner to establish he is entitled to habeas relief concerning his allegation of ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test established in Strickland, supra; that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687. "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689. Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes,

463 U.S. 745, 751 (1983)).  "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson, 143 F.3d at 1321. If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).

"If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance...." Cargle, 317 F.3d at 1202.  If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Id.  See Hawkins, 185 F.3d at 1152 (if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

As cause for his procedural default of the Sixth Amendment claims asserted in the Petition and as an independent basis for habeas relief asserted in ground eight, Petitioner contends that his appellate counsel provided constitutionally ineffective assistance because he failed to raise the claims of ineffective assistance of trial counsel.  "Because the same legal standards govern [a habeas] petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the reviewing court] must determine whether [the] petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." Id. at 1273.

"The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel." Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Hill v. Lockhart, 474 U.S. 52, 57 (1985). "To prove deficient performance, [Petitioner] must overcome the presumption that counsel's conduct was constitutionally effective . . . . For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

In his Petition, Petitioner sets forth numerous complaints about his defense attorneys. Petitioner asserts in counts one and two that Mr. Camp did not adequately investigate supporting caselaw or potential witnesses before the hearing conducted on January 22, 2008, on Petitioner's motion to suppress his confession. Petitioner presents a lengthy explanation of why he believed his confession was coerced, including the alleged presence of an "'Angry

Mob' of Murder One gang members" outside the Enid Police Department which caused him to "fear for [his] life and family's life . . . ." and return inside the police department, where he was interrogated and confessed to the murder. Petitioner contends that he confessed to the crime only in order to "protect [his] family."

Petitioner urges that Mr. Camp should have subpoenaed two witnesses for the hearing on the motion to suppress, a police detective who was present at the time of the confession and the individual who purportedly conducted a consensual polygraph examination of Petitioner prior to his confession. However, in the absence of any allegation that his confession was coerced by law enforcement misconduct, a necessary element of a due process violation, see Colo. v. Connelly, 479 U.S. 157, 163-164 (1986), Petitioner's defense counsel's failure to investigate the existence of witnesses or caselaw in support of the motion to suppress Petitioner's confession was not outside the range of reasonably professional assistance. Moreover, Petitioner cannot show prejudice as a result of any error in defense counsel's assistance in connection with the motion to suppress. The record demonstrates that Petitioner clearly and voluntarily admitted his guilt in open court during the plea proceeding and in his contemporaneous written affirmation of guilt contained in the Summary of Facts form. Even if Petitioner entered his plea while harboring a subjective belief that his confession was coerced, Petitioner has not demonstrated prejudice. Petitioner has not demonstrated that he would have gone to trial had his attorney further investigated his claims of coercion. Petitioner was present at the preliminary hearing, where eyewitnesses identified him as the individual who shot the victim, and at the hearing on the motion to suppress his

confession, where his attorney unsuccessfully argued that the confession was coerced because "somebody from the decedent's gang" was outside the police station and Petitioner felt coerced because these individuals "probably would do [Petitioner] harm should he leave the police department." Supplemental Response (Doc. #20), Ex. 1(partial transcript of hearing on motion to suppress), at 5-6. The record of the plea proceeding clearly shows that his plea was entered knowingly and voluntarily with a full understanding of the consequences of the plea. Thus, Petitioner has not demonstrated ineffective assistance of counsel in grounds one and two.

In grounds three and four, Petitioner contends that Mr. Camp provided constitutionally ineffective assistance of counsel because he advised Petitioner to enter a blind guilty plea and, in connection with this advice, stated that a previous state court criminal case, State v. Winderweedle, provided a basis for arguing that Petitioner "was eligible for a similar sentence as Mr. Winderweedle." Petition, at 18. Petitioner was clearly made aware of the consequences of his blind plea during the plea proceeding. Even though he may have subjectively believed that his attorney would successfully argue at sentencing in support of a partially suspended sentence like that imposed upon the defendant in another state criminal case, this subjective belief, and his counsel's advice that the sentence imposed in the other case provided precedent for a similar sentence, does not demonstrate that his counsel provided assistance outside the wide range of reasonably professional assistance demanded of criminal defense attorneys. Additionally, in light of the clear evidence in the record that at the time of the plea Petitioner understood the consequences of his blind plea, including the

24

range of punishment that could be imposed pursuant to the plea, and in light of Petitioner's awareness that the prosecution had substantial evidence of Petitioner's guilt prior to the plea, Petitioner cannot demonstrate prejudice. See Gordon, 4 F.3d at 1571("Given the fact that Defendant pleaded guilty even after being so informed by the court, his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct at sentencing, he would have insisted on going to trial, is insufficient to establish prejudice."). See also Miller v. Champion, 262 F.3d 1066, 1074 (10th Cir. 2001)(in assessing "whether a petitioner would have changed his plea, and therefore whether he was prejudiced," court may consider "the strength of the prosecution's case"), cert. denied, 534 U.S. 1140 (2002). Petitioner has not demonstrated constitutionally ineffective assistance of counsel in grounds three and four.

In ground five, Petitioner contends that he was denied constitutionally effective assistance of trial counsel because Mr. Camp advised Petitioner to enter a blind plea despite the existence of an "absolute and viable defense" to the charge related to the reliability of eyewitness testimony. Petition, at 15. However, at the plea proceeding Petitioner affirmed in open court that his attorneys had discussed with Petitioner their "opinions on maybe how to proceed at trial" and provided Petitioner with "pros and cons and options and possibilities" in connection with the criminal case, but the attorneys had made no guarantees to Petitioner as to what sentence Petitioner would receive. Response, Ex. 17, at 5 (transcript page number). In light of the record of the plea proceeding, Petitioner has not demonstrated either an unreasonable professional error by defense counsel or a reasonable probability that he

would not have pleaded guilty and would have insisted on going to trial despite any error by his defense attorneys. Thus, Petitioner has not demonstrated constitutionally ineffective assistance of counsel in ground five.

In ground seven, Petitioner contends that he was denied constitutionally effective assistance at the hearing on the motion to withdraw his plea because Mr. Lovell did not solicit the testimony of Petitioner's father and sister in support of Petitioner's testimony. In his post-conviction appeal, Petitioner presented this same claim. In support of his post-conviction claim, Petitioner included as an exhibit an affidavit of his father, Mr. John Jamieson. In this affidavit, Mr. Jamieson attests that he had spoken with Petitioner's defense counsel, Mr. Camp, on or about May 11, 2007, that Mr. Camp informed him about a sentence rendered in another criminal case, and that Mr. Camp advised Mr. Jamieson that he, Mr. Camp, was "hop[ing] he could convince the DA [sic]" to enter into a plea agreement for a similar sentence in Petitioner's case. Response, Ex. 13, att. This affidavit does not, of course, support Petitioner's claim that Mr. Lovell provided constitutionally ineffective assistance by failing to have Petitioner's father testify at the hearing on the motion to withdraw. The affidavit contains no indication of any promise made by Mr. Camp as to a sentence. Moreover, in light of the record of the plea proceeding demonstrating Petitioner was fully aware of the consequences of the plea, including the trial rights he was waiving by entering the plea, Petitioner has not demonstrated either an unreasonable professional error by defense counsel or a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial despite any error by his defense attorneys. Thus, Petitioner has not

demonstrated constitutionally ineffective assistance in ground seven.

Because Petitioner's underlying contentions of ineffective assistance of trial counsel are not meritorious, Petitioner has not demonstrated that his appellate counsel provided constitutionally ineffective assistance by failing to raise his claims of ineffective assistance of trial counsel in the certiorari appeal. Hence, Petitioner has not demonstrated cause for his state court procedural default of his Sixth Amendment claims of ineffective assistance of trial counsel.

Petitioner has not expressly alleged that this Court's failure to review the merits of his defaulted claims would result in a fundamental miscarriage of justice. This exception to the procedural default doctrine applies only in cases where the habeas petitioner can show that the claimed errors "'probably resulted in the conviction of one who was actually innocent.'" Sellers v. Ward, 135 F.3d 1333, 1338 (10th Cir.)(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)(internal quotations omitted)), cert. denied sub nom. Sellers v. Gibson, 525 U.S. 1024 (1998). See Herrera v. Collins, 506 U.S. 390, 404 (1993)("The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence."). The record demonstrating Petitioner entered a knowing and voluntary plea with full awareness of its consequences, as well as his clear affirmation of guilt, are not consistent with any assertion of actual innocence. Petitioner has not demonstrated that a fundamental miscarriage of justice would result from the application of the procedural bar doctrine under these circumstances.

In ground eight, Petitioner contends that he was denied constitutionally effective

assistance of appellate counsel because his appellate counsel "fail[ed] to obtain information and affidavits from Mr. Jamieson's father and sister in support of his claim on Direct Appeal." Petition, at 20.  Generously construing his *pro se* arguments, Petitioner is asserting that his appellate counsel should have raised a claim of ineffective assistance of trial counsel due to the alleged misinformation Mr. Camp provided Petitioner as to the possible sentence he could receive upon his guilty plea. His claim of ineffective assistance of appellate counsel is substantially the same as his underlying claims of ineffective assistance of trial counsel presented in grounds three, four, and seven.  Petitioner contended in his post-conviction appeal that his "Father and Sister [would] testify to Mr. Camp's influence on [Petitioner] to enter plea, so his punishment could be mitigated according to State v. [Winderweedle] and his ability to obtain a 30 year sentence." Response, Ex. 10, at 5.  Petitioner received a hearing on his post-conviction application in the state district court.  The district court denied the application, and the OCCA affirmed that decision in Petitioner's post-conviction appeal.  In consideration of the affidavit of Petitioner's father presented by Petitioner in support of his claim of ineffective assistance of trial and appellate counsel in his post-conviction appeal, Petitioner has not demonstrated either an unreasonable professional error by his appellate counsel or prejudice as a result of any error by his appellate counsel.  Thus, his claim in ground eight does not entitled him to habeas relief.

VI. Evidentiary Hearing

In ground nine, Petitioner contends that he was not provided reasonable notice of the district court's decision to grant an evidentiary hearing in his post-conviction proceeding, and

he was therefore unable to introduce evidence or have witnesses available to testify at the hearing in support of his post-conviction application. In his responsive pleading, Petitioner clarifies that his allegations in ground nine of the Petition are presented only in support of his request for an evidentiary hearing and not as a separate ground for habeas relief. Petitioner's Response (Doc. # 21) at 2 ("In [ground nine] I was not asking for Habeas Relief, as the Respondent argues; rather, that I am entitled to an Evidentiary Hearing in federal court.").

The AEDPA "generally prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 n. 1 (2007)(citing 28 U.S.C. § 2254(e)(2)). Petitioner asserts in ground nine that he was not given any notice of the state district court's decision to grant his motion for an evidentiary hearing in his post-conviction proceeding and he was therefore "unable to introduce evidence for Record of Appeal or have witness's testify; Det. Skaggs and officer who administered polygraph." Petition, at 21. In his Petition, Petitioner requests an evidentiary hearing in ground nine for the purpose of discovering what evidence Detective Skaggs and the polygraph examiner might provide that would support his claim that his confession was coerced. However, this claim was presented in an evidentiary hearing prior to the entry of Petitioner's guilty plea. Petitioner contends in his responsive pleading that he is entitled to an evidentiary hearing in order "to prove Mr. Camp told me, my father and sister, Mr. Winderweedle was sentenced to 15 years in prison in Garfield County and is precedence [sic] for my sentence to follow as pricipals [sic] of

equal justice." Petitioner's Response (Doc. # 21), at 2.  It appears Petitioner is seeking an evidentiary hearing concerning his claims of ineffective assistance of trial counsel and an invalid plea.  The record contains partial transcripts of the state court evidentiary hearings in which these issues were addressed, and  Petitioner was represented by counsel at the hearing on the motion to withdraw his plea.  Thus, Petitioner had multiple opportunities to present the factual bases for his claims.  Moreover, Petitioner's claims of ineffective assistance of counsel and an invalid plea may be resolved on the basis of the record. Therefore, an evidentiary hearing is not warranted. See Torres v. Mullin, 317 F.3d 1145, 1161 (10th Cir.), cert. denied, 540 U.S. 1035 (2003).

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ____April 26th____, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this __5th__ day of __April__, 2011.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE